## JOHN OUTCALT AND CORNELIUS B. OUTCALT v. GEORGE C. LUDLOW ET AL.

1. When a father gives by parol to a married daughter a house and lot, and puts her, with her husband, in possession, and they continue to occupy the same under the gift, the husband, as such, is entitled to the enjoyment of the property, but not to the prejudice of the wife. His possession is only through her, and he cannot, by any act of his own against his wife, change it into an adverse possession.

2. The acts and declarations of the husband, while in possession, are competent evidence for or against those who claim under him, to show the character of his possession during the period covered by them in their claim of title.

In ejectment.

The plaintiffs brought suit to recover possession of a house and lot in the city of New Brunswick. They claimed title as the heirs at law of John D. Outcalt, deceased, who purchased the same in 1836, at sheriff's sale, as the property of John Outcalt, his father. The judgment under which the sale was made was entered October 12th, 1845. John Outcalt never had any deed, in fact. He died in 1853, continuing to receive the rents and profits, from the sheriff's sale to the time of his death. John D. Outcalt, the purchaser, died in 1855, having had no actual possession of the premises. The plaintiff relied upon an adverse possession of more than twenty years previous to the date of the sheriff's deed, and beyond the date of the judgment.

The defendants contend, that John Outcalt never held the property adversely; that he possessed it only in conjunction with his wife, Hannah Outcalt, to whom her father, Samuel Van Tine, had given it as early as 1805, and who survived her husband, and died in 1866. They insisted, that if any interest in the property passed by the sheriff's deed, it was only the interest of John Outcalt, as husband, and that the same was terminated by his death, in 1853. They also

claimed title under Hannah Outcalt, to whom the property was originally given by her father.

On the trial, a verdict was given for the defendants, and a rule was granted that cause be shown by defendants why the same should not be set aside.

The principal reasons assigned were, that the judge admitted unlawful evidence and misdirected the jury, and that the verdict was against evidence.

The rule was argued by—

*H. V. Speer*, for the defendants.

*A. V. Schenk* and *T. N. McCarter*, contra.

The opinion of the court was delivered by

BEDLE, J.  The premises in dispute are situate in New Brunswick, at the corner of Albany and Neilson streets. The plaintiffs are the heirs at law of John D. Outcalt, deceased, and claim title by a deed from Abraham Cruser, sheriff of Middlesex county, to the said John D. Outcalt, dated June 6th, 1836. The sale was made by the sheriff under an alias *fi. fa.*, issued out at this court, tested of the Term of November, 1833, upon a judgment confessed by John Outcalt, the father of John D., to John H. Disborough, on the twelfth day of October, 1825. The premises were levied on and sold as the property of John Outcalt. It in no way appears that John Outcalt ever had any deed, *in fact*, but the case for the plaintiffs rests entirely upon the claim of an adverse possession for over twenty years' previous to the date of the sheriff's deed, and running back beyond the date of the judgment. John Outcalt died in 1853, and John D. died in 1855. John D. had no *actual* possession. John Outcalt continued to receive the rents and profits from the date of the sheriff's deed to the time of his death ; but the plaintiffs allege that he was permitted to do this by his son, John D., for his support and that of his family.

The defendants deny that John Outcalt had any interest in the premises, other than in right of his wife, Hannah, as her husband. She survived him, and died January, 1866. She was a daughter of Samuel Van Tine, who died in 1858, and the defendants say that he (Van Tine) became owner of this property in the year 1801 or 1802; that John Outcalt and his wife, Hannah, occupied the premises previous to, and after Van Tine's death, under a parol gift from him to his daughter, but that, having died without actually making a conveyance to her, the fee then descended to his four children, viz., Hannah, the wife of John Outcalt; Catharine, the wife of Nicholas Van Wickle; Jane, the wife of Daniel W. Disborough, and Mary, the wife of Lewis Jolly, all of whom were married at his death. The defendants produce a deed from Disborough and wife, Van Wickle and wife, and Mary Jolly, (her husband having died April 2d, 1834,) to William Disborough, dated April 28th, 1835, for all their right, title, and interest in the premises. The defendants are the heirs-at-law of Julia A. Ludlow, who died in 1862, and she was the sole heir of William Disborough, he having died August 11th, 1838. The defendants also produce a deed from Hannah Outcalt to Julia A. Ludlow, dated October 26th, 1858, for all her estate in the same premises. By virtue of these deeds, and as heir-at-law of William Disborough, Julia A. Ludlow became seized of all the estate that the children of Samuel Van Tine, or either of them, had in the premises in dispute. If Samuel Van Tine was the legal owner of this property, and died so seized, the defendants have a good paper title for it from all his heirs; or if Hannah Outcalt's possession under a parol gift from her father, ripened into a title in her for the whole, the same result would follow, by virtue of her conveyance to Mrs. Ludlow. Hannah Outcalt received the rents and profits of the premises from the death of her husband, in 1853, up to the time of her conveyance, and Mrs. Ludlow received them from that time to her death. The plaintiffs rely upon a continuous possession in John Outcalt, from about 1805 to the time of his death, without

producing any deed. The defendants set up that John Outcalt's possession was not adverse, but that it flowed to him, as husband, from his wife, under the Van Tine title, so that in one aspect, as remarked by the judge at the circuit, "the plaintiffs claim title under Judge Outcalt, and the defendants claim title under his wife."

John Outcalt, or Judge Outcalt, as he is called, may have been in possession, either in right of his wife or in his own right. The defendants are not able to produce any deed to Van Tine, but they allege, either that it is lost, or that it wrongfully came to the possession of John D. Outcalt, and is wrongfully withheld by the plaintiffs, if they have it. This deed, the defendants say, was made by John W. Moore, the owner of the property, to Samuel Van Tine, in the year 1801 or 1802. The existence of that deed was one of the questions in the cause, and another was, supposing such a deed to have been made, whether John Outcalt's possession was adverse to it, in his own right, or whether he held only in right of his wife, by the gift or permission of her father.

The defendants proved, by Nicholas Booraem and Jacob B. Gaddis, certain declarations of John Outcalt, made in the years 1832, 1833, and 1835—between the date of the judgment and the sheriff's sale—as follows: Booraem testified that on the second day of February, 1835, he "heard John Outcalt say, that John W. Moore gave the deed to Samuel Van Tine, and that he, John Outcalt, had that deed once in his hands." Gaddis testifies, "that in 1832 or 1833, John Outcalt told me of a deed; he said the property was purchased by Samuel Van Tine from John W. Moore; he said he had no title to it;" "that the only title he had to the property was through his wife." He also testified to a conversation in his presence, between John Outcalt and Thomas Letson, in the spring of 1832 or 1833, in which "John Outcalt said the property belonged to Samuel Van Tine, who purchased it; that he, Letson, was cognizant of the same fact." Also, that he said, "I have no right to the property except through my wife." Also, that "he said the deed

was made to Van Tine, who left it with his wife, Hannah Outcalt; that Samuel Van Tine never conveyed it." This evidence was objected to by the plantiffs, and is the chief ground upon which a new trial is now asked. The plaintiffs, when they first rested, had produced evidence showing that Judge Outcalt was in the actual occupation of the property "as long ago as 1815," and down to about 1822; also, that his son-in-law, Daniel Pierson, occupied it after him, for eight or ten years, and at the date of the judgment. It was claimed by the plaintiffs, that Judge Outcalt's possession, not only during his actual occupancy was adverse, but that Pierson's occupancy was under John Outcalt, and also adverse. It was further proved by the plaintiff, that John Outcalt, after Pierson ceased to occupy, rented out the property to different tenants, from that time up to the sheriff's sale, and after that, down to the time of his death, in 1853.

Evidence was also produced of the acts and declarations of John Outcalt, from about the year 1832 to the date of the sheriff's deed, to prove that he claimed the property as his own, rented it in his own name and right, and considered and treated it as his own. This class of evidence was also continued, covering the whole time, from the sheriff's deed to Judge Outcalt's death, the only difference during this time being that the plaintiffs claimed that, while the continuing occupancy of John Outcalt, up to his death, was adverse to everybody else, that, so far as John D. Outcalt was concerned, it was by his permission. In brief, the whole scope and object of this testimony was, to make out, by the acts and declarations of John Outcalt, a continuous adverse possession, from the date of the judgment to John Outcalt's death; and also, by these same acts and declarations, to give the same character to his possession previous to the judgment. This suit was brought in the year after Judge Outcalt died. Whatever rights he had as husband then ceased, as to him or his creditors, and there could be no ground of recovery by the plaintiffs, unless they could show a title in fee in Judge Outcalt, upon which the judgment

had become a lien. They did not do it by deed, and the only course left for them was, by adverse possession. Under these circumstances, the great question in the cause was, as to the *character* of John Outcalt's possession. The defendants did not claim under John Outcalt, but under his wife, and their contention was, that his possession was not in any way antagonistic to her right, but in accordance with it, and alone by virtue of it. The vital inquiry, then, was, whether this possession was in his own right, or as husband, in right of his wife. Judge Outcalt being dead, there could be no recovery under the sheriff's deed, unless it was shown that he had an adverse possession, and sufficiently long to make a title. The plaintiffs tried to show this by these acts and declarations, after the judgment, up to and after the sheriff's sale, and also to make the possession before the judgment adverse, by the same subsequent acts and declarations. The defendants had the same right to show, by different acts and declarations of John Outcalt after the judgment, that he held in right of his wife, under a title to her father, as the plaintiffs had to show, by the same class of evidence, that he held in his own right, the question being, what kind of a possession did John Outcalt have *during the period that the plaintiffs covered in their claim of title?* The evidence of the defendants, objected to, was intended to show, that before the sheriff's deed, John Outcalt recognized the existence of a deed to Samuel Van Tine, under which he and his wife went into possession, in her own right, and that he had no title to the property, and no right, except through his wife. The course taken by the plaintiffs to make an adverse title in him, subsequent to the judgment, in effect made him the person under whom the plaintiffs claimed, even after judgment. The proof of his acts and declarations, in reference to his possession after judgment, was just as legal as if done and made before judgment. And although the debtor could not defeat a title upon which the judgment was a lien, by subsequent acts and declarations, yet, if the title is to accrue, and to be proved by the subsequent possession and

conduct of the debtor, that debtor becomes as the creditor, in his relation to the purchaser under the judgment, and the purchaser would be bound by the debtor's acts and declarations concerning the *character* of his possession during the period that the purchaser seeks to establish an adverse possession through him. The evidence objected to was legal for the purpose intended.

But apart from this question of strict legality, I should be unwilling to disturb the verdict, if the evidence had been of doubtful competency. The defendents showed that John Outcalt and his wife, and Daniel W. Disborough and his wife, Jane, she being a daughter of Samuel Van Tine, lived upon this property in 1809 or 1810, and continued there together till about 1815 or 1816, when Disborough and his wife left. Judge Outcalt and his wife continued to live there till about the year 1821 or 1822. The plaintiffs, in their rebutting evidence, recalled James A. Priestley, who said he *thought* Judge Outcalt was in possession as early as 1804 or 1805, and that Disborough and his wife were not living there then, but did afterwards. The defendants produced a deed for the premises from Perez Rowley and wife to John W. Moore, dated March 14th, 1801, recorded in the Middlesex clerk's office, April 9th, 1801. It recites that Rowley purchased of James Drake and Frederick Van Dyke, by deed dated August 10th, 1798. The testimony is satisfactory that Perez Rowley was in possession as owner, and hence Moore, by his deed became the owner. The defendants also offered a deed from John Outcalt and Hannah, his wife, to Abraham Blauvelt, dated May 4th, 1802, recorded in Middlesex clerk's office, October 22d, 1802, which describes the beginning place of the lot therein conveyed, as " beginning on Queen street, at a fence on the southerly side of a brook or run of water, being the *southerly corner of Samuel Van Tine's lot*," and the last course as " thence along Queen street a northerly course forty feet, to the fence and *lot of Samuel Van Tine*, and place of beginning." This lot, it is proved and admitted, lies to the south, adjoining the disputed prem-

ises. Queen street has been changed to Neilson street. The deed to Moore embraced not only the *locus in quo*, but also this lot. How John Outcalt got title to it does not appear, but his deed most distinctly recognizes the premises to the north as Samuel Van Tine's lot, May 4th, 1802. This, of course, is not conclusive, but is entitled to great weight as a solemn recognition of the ownership of Van Tine at that early day. The defendants produced Hannah Outcalt, widow, the only witness in the case who knew whether she and her husband went into possession under Van Tine. She swears distinctly, that her father gave her the property. She also swears, that her father and mother both gave it to her ; she further says, that she knew John W. Moore, and that he gave her father a deed for it; that she had seen and read it; that it was from John W. Moore to her father ; that she has often seen it.

She also says that her husband did not ever have the deed, that he had nothing to do with it; that the last time she saw it, was down in Spotswood, at Samuel Overton's. This was at the mill in Spotswood. Margaret Overton, the widow of Samuel Overton, and daughter of John Outcalt, testifies that in 1833 she saw, at the mill at Spotswood, a deed to Samuel Van Tine, from John W. Moore, for the property in question ; that she wanted the papers moved out of a closet, and her husband removed them, and pulled out the deed from among the other papers ; that she saw her grandfather's name was on it. "Samuel Van Tine's and John W. Moore's name was on it ;" "*that the deed was brought there when mother moved from New Brunswick to the mill;* that her father went first, and had the mill fixed, and then her *mother came and brought the papers;* that the deed was kept at the house in Spotswood." This witness lived with her father and mother, at New Brunswick, and moved with them to the mill, she says, in 1822 or 1823. She married about two years afterwards, and after being away awhile, returned to her home, where she and her husband continued till and after her father and mother went to live

on a farm near New Brunswick. She further says that the deed was left on the shelf in the house, when she and her husband moved away, in 1835. John D. Outcalt then lived there, she says, and remained afterwards. The defendants proved by Lewis G. Letson, an aged witness, that in 1809 or 1810, while John Outcalt and Daniel W. Disborough lived on the property in question, the fence was down, and he saw Samuel Van Tine putting it up—righting it up along the brook; that he had no lumber, but his tools there, and that the witness assisted him a little; that five or six months after that he saw Van Tine come with a man, in a farm wagon, with some timber, to mend the cellar door. It appears by the testimony of Colonel Scott, that Samuel Van Tine lived somewhere near Spotswood.

Samuel Van Tine died in 1818, and the only witness who gives us any light as to how Judge Outcalt, with his wife, came to live upon the property, is Hannah Outcalt. She appears to be credible, and there is no fact in the case to justify a jury in disregarding her testimony. The additional evidence of Mrs. Overton goes to confirm her statement, and the recital in the deed from John Outcalt, in 1802, is very strong evidence as to Van Tine's ownership at that time. The fact that under the first *fi. fa.* issued upon the judgment at its date, there was no levy made upon this property, and no levy made until the *fi. fa.* of 1833, is also strong corroborative evidence that Hannah Outcalt was considered the real owner, or rather that John Outcalt was not, previous to 1833. Taking, then, this testimony of Hannah Outcalt as true, it appears that she and her husband entered into possession under a parol gift from her father, and that he permitted them to occupy it, as the property of the wife. A possession entered into, in right of the wife, by the permission of the father, although the husband, as such, would be entitled to enjoy it as long as the father permitted, could not be taken advantage of by the husband to the prejudice of his wife. His possession was only through her, and he could not, by any act of his own, against his wife, change it

into an adverse possession. If she was permitted by the father to have possession of the whole as hers, and by lapse of time it ripened under an adverse possession against the father, or his descendants, into a title, it was her title, and at the death of John Outcalt she would have the full benefit of it against any one claiming under her husband. Whether it so ripened, makes no difference in this case, as these defendants have deeds from Hannah Outcalt, and the other children of Samuel Van Tine. This view of the case was, substantially, presented to the jury in the charge. The verdict being in accordance with this aspect of it, which is well sustained by the evidence, it ought not to be disturbed, even if any doubt existed in regard to the evidence complained of. But upon each of these grounds the verdict should be sustained.

This view of the case also disposes of the objection that the defendants did not set out in their bill of particulars, furnished under the fifty-sixth section of the " act to simplify the pleadings and practice in courts "—*Nix. Dig.* 671*— a claim of title in Hannah Outcalt, in words, for the *whole property*, but only set out upon this part of their title, that Samuel Van Tine died seized of the lands, leaving four daughters, to whom they descended, as his heirs. The deeds from Hannah Outcalt and her sisters are particularly mentioned. No adverse possession in Judge Outcalt's wife had become perfected into a title, at Van Tine's death, in 1818. His estate, whatever it was, did then descend to his heirs, and the deeds from them, under which the defendants claim, conveyed all that estate, unless Judge Outcalt had an adverse possession, to defeat their operation. It was clearly competent for the defendants, without setting it out in their bill of particulars, but as a matter of defence against the plaintiffs' claim of an adverse possession in Judge Outcalt, to show that he and his wife held the possession of the property, under a parol gift to her, from her father, and thereby defeat the claim that Judge Outcalt's possession was adverse or in his own right.

* *Rev.,* p. 329, § 25.

None of the other objections urged are sufficient to justify the court, under the views already stated, in disturbing the verdict, and it is, therefore, unnecessary to refer to them in detail.

The rule should be discharged, and judgment entered for the defendants upon the verdict.