ELMER *et al.* v. HOLMES.

(In Banc.   Dec. 9, 1940.)

[198 So. 84.   No. 34315.]

Mize, Thompson & Mize, of Gulfport, for appellants.

788

**W. L. Guice** and **J. D. Stennis, Jr.,** both of Biloxi, for appellee.

Argued orally by **W. L. Guice** and **J. D. Stennis, Jr.**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Mrs. F. W. Elmer, Jr., and her husband, F. W. Elmer, Jr., appellants, prosecute an appeal from a decree of the chancery court of Harrison county in favor of Mrs. Mary C. Holmes, appellee, confirming a decree of a sale pursuant to a decree ordering partition of land and settling the rights of the parties in favor of the appellee and against the appellants.

Mrs. Holmes filed her bill against the appellants about December 22, 1936, in which she sought to have confirmed as against the appellants her title to a lot in the city of Biloxi, Mississippi, having a frontage on the Gulf of Mexico about 96 feet, and running north 800 feet more or less to Water Street, with fixed east and west boundaries. The bill alleged that she was owner of the land as purchaser at a foreclosure sale ordered by the chancery court and confirmed by that court on November 9, 1935.

This lot was alleged to have belonged to F. W. Elmer, Sr., during his lifetime. Mr. Elmer, Sr., died intestate about December 23, 1926. Unquestionably, Elmer, Sr., had title to all of the land sought to be confirmed at the date of his death. The deed of trust through which she claimed title was executed by F. W. Elmer, Jr., Mrs. Annie Elmer Sichirich, Nina Elmer Scott, Margueryte Elmer, Cora Elmer Enochs and Inez Elmer Ebersole, all of whom were children and heirs at law of F. W. Elmer, Sr., at the date of his death and in whom the record title of F. W. Elmer, Sr., was vested at the date of this execution. The deed of trust was executed in favor of R. H.

Holmes, and prior to the initiation of the foreclosure proceedings had been assigned to the appellee, Mrs. Mary C. Holmes.

It was further alleged in the bill that the original loan of $13,000, upon the security of the deed of trust to the property, was used to pay all of the outstanding debts and probated claims of F. W. Elmer, deceased. The parties executing the deed of trust were all of the heirs at law of F. W. Elmer, deceased, except Edward E. Elmer, who had, prior to the execution thereof, executed a separate deed of trust on his interest in this lot, which had been purchased at the foreclosure sale of Mrs. Ebersole.

The appellee alleged in her bill that she had obtained possession of all of the land except a residence upon the north side of East Beach Avenue in the city of Biloxi, known as 121 E. Beach Avenue, but that F. W. Elmer, Jr., and wife had paid rent to her in pursuance of a written agreement entered into by F. W. Elmer and filed in the deed of trust foreclosure proceedings, although she claimed that he had not paid all of the rent pursuant to that agreement.

The bill also alleged that Mrs. F. W. Elmer was claiming some interest or title to said property by virtue of parol gift from her father-in-law, F. W. Elmer, Sr., some time during the years 1918-1919, and by virtue of the occupancy of Mrs. Elmer, Jr., since that time. The bill still further alleged the payment of taxes by appellee on the entire property, redemption from tax sales, rental for part of the lot involved from the Elmers, as a charge against F. W. Elmer, Jr., as to his one-seventh interest in the property by subrogation and as to the money paid from the original loan by the heirs at law in discharge of the probated claims and indebtedness of F. W. Elmer, Sr., the details of which are unnecessary to set forth. Exhibits of the foreclosure proceedings, the agreement of F. W. Elmer, Jr., to pay rent, the deed of trust and other documents were attached and made a part of the bill.

The answer of Mrs. Elmer, Jr., set up the claim to the lot, 121 E. Beach Avenue, and the residence, the lot being 41 feet on the Gulf and running back 168 feet, by virtue of a parol gift of the same to her by F. W. Elmer, Sr., in his lifetime, and the continued adverse possession of the same for more than ten years since the date of the gift in 1918 to the date of the filing of the bill herein, and denied all knowledge of the deed of trust or the foreclosure proceedings thereunder, as well as knowledge of any kind of claim of Mrs. Holmes until a short time prior to the filing of the bill here involved.

The appellants set up in their answer that on February 28, 1936, Mrs. Holmes filed a complaint of unlawful entry and detainer in the county court of Harrison county, to which she and her husband had entered their appearance, and finally, after much pleading, on July 17, 1936, judgment was entered showing that Mrs. Holmes was not entitled to the possession of the land which Mrs. Elmer claimed, and alleged that the issue in the unlawful entry and detainer case was which of the parties owned the land in controversy; and that all of the matters and things set up in the bill of complaint as to the lot claimed by Mrs. Elmer were completely adjudicated by a court of competent jurisdiction. Finally, the Elmers answered further that they had been living on the property and using same as a homestead during all of the time since the parol gift and at the time the deed of trust was executed by F. W. Elmer, Jr.

The answer on the plea of res adjudicata was finally amended so as to set up the appeal in the unlawful entry and detainer suit, reported in 182 Miss. 171, 181 So. 325, the case being Holmes v. Elmer et al., and the final judgment of this Court was in Mrs. Elmer Jr.'s favor.

In discussion of the four points presented by the appellant for reversal of the decree of the court below, we shall state such facts as are applicable to the several points, without undertaking a full statement of the vo-

luminous record, and shall adopt our own order for the consideration of these points.

(1) The court below held that Mrs. F. W. Elmer, Jr., was not a competent witness in her own behalf to establish her claim to a parol gift of the land to her by her father-in-law, although her evidence was made a part of the record and excluded. That part of her evidence which pertained to the character and circumstances of possession subsequent to the death of F. W. Elmer, Sr., was admitted. Her testimony was to the effect that sometime in 1919, F. W. Elmer, Sr., in the presence of her husband and herself told her that he would give her this lot then occupied by a tenant, and that she collected the rents from this tenant until during the latter part of 1919, when they moved into the house; and that F. W. Elmer, Sr., pointed out the lines, there being certain fences which enabled her to find the lines of this part of his original tract; also, that they occupied the place from that time until the death of Elmer, Sr., in 1926. The evidence concerning what transpired between her and her father-in-law prior to his death in 1926 was properly excluded by the court. It was an effort to establish a claim against his estate. If she had succeeded in this controversy, she would thereby have dimished the amount of land owned by him, and the value of his estate to the extent of the value of this house and lot.

By Section 1529 of the Code of 1930, a person is not competent to testify as a witness to establish his own claim or defense against the estate of a deceased person. The heirs at law, including F. W. Elmer, Jr., by the execution of the deed of trust to Holmes in 1929, asserted that all of this lot, including that claimed by Mrs. Elmer, Jr., was a part of the estate of F. W. Elmer, Sr., left by him at his death, and her effort was to show that this particular lot of land had not been a part of the estate since the parol gift. The fact that the heirs at law conveyed this interest prevented her from being competent to testify against the transactions involved in the ad-

ministration of the estate of F. W. Elmer, Sr. At the time of his death, she had no title whatever, either by adverse possession or otherwise. The parol gift was void, and it was so conceded. It is only contended that the parol gift, coupled with ten years adverse possession, would vest Mrs. Elmer, Jr., with title; and, in order to have the title completed by ten years' adverse possession, the time must have extended some years after the death of Elmer, Sr., in 1926, according to her testimony. If the asserted claim of the heirs at law could have been destroyed by her testimony, then titles to property would be at the mercy of one seeking to establish a claim simply because that title was a part of the estate in the heirs of the decedent and would immediately be destroyed by the conveyance thereof by such heirs. Our attention has not been called to a case by either appellee or appellant which upholds this contention.

Many years ago, this Court held in the case of Jacks et al. v. Bridewell et ux., 51 Miss. 881, in construing this statute, as follows; ''The term 'estate of a deceased person' is used in its broad and popular sense to signify all the property of every kind which one leaves at his death. Therefore, any right asserted against real or personal property, left by a deceased person, as accrued to the party by virtue of a dealing between him and such person, since deceased, renders the person asserting it incompetent as a witness, to maintain in his own behalf such assertion of right.'' The exclusion of testimony, in which the controversy is between him who would testify to a claim and right as administrator, extends to every assertion of such right by a party to any part of an estate left by a deceased person and claimed by such person, or to be subject to a demand by reason of an alleged transaction between such party and deceased person. This rule of law has been upheld by the Court in the cases of Green v. Mizelle, 54 Miss. 220, 224; Rothschild v. Hatch, 54 Miss. 554, 560; Jackson v. Smith, 68 Miss. 53, 54, 8 So. 258; and

a discussion of all of the cases since leaves no doubt that this Court has consistently followed it.

The appellant expresses with some confidence the competency of Mrs. Elmer as a witness by citing to us the case of Davis et al. v. Crawford, 175 Miss. 493, 168 So. 261, in which case the Court quoted from the case of Jacks v. Bridewell, supra, with approval. In the Davis case, it was clear that the witness Brewer was not undertaking to testify to any claim of his own against the estate of his father, but undertook to show by his evidence a transaction between his father and a bank as to the application of certain payments made to the bank, thereby protecting and preserving the homestead estate of his father. The case has no application here. Mrs. Elmer, Jr., was clearly incompetent.

(2) It is next insisted that because each of the parties claiming title to the land here involved in the unlawful entry and detainer suit—the issue being title as between the same parties—that case constitutes res adjudicata. In their argument on this point, the appellants ignore Section 3471, Code of 1930, which section has been a part of the law of this State for more than one hundred and twenty years. That section is, as follows: *"Judgment not conclusive in another action.*—A judgment rendered in a suit of unlawful entry or detainer, either for the plaintiff or defendant, shall not bar any action in the circuit court between the same parties, respecting the same land; nor shall any judgment given therein be held conclusive of the facts found in any other action between the same parties." See Richardson v. Callihan, 73 Miss. 4, 19 So. 95.

As we read the opinion in the former case, Holmes v. Elmer, this Court held in the unlawful entry and detainer suit that because title was the only issue, and Mrs. Holmes was not one of the parties permitted by the unlawful entry and detainer statute to bring such an action, therefore the judgment in favor of Mrs. Elmer in

the lower court could not be reversed. The plea of res adjudicata was properly denied by the court below.

(3) It is insisted that the court below erred in excluding the evidence of F. W. Elmer, Jr. An examination of the record shows that when F. W. Elmer, Jr., corroborated his wife and testified to the same facts as to the gift by his father to his wife in parol, the court reserved the ruling and in the decree specifically held with doubt that it was competent but also that it was of little weight in determining the issue of fact.

(4) Appellant urges that the court below erred in ordering a partition of this entire tract or lot of land, including that part occupied by appellant and her husband, for the reason that she went into possession under the parol gift of her father-in-law as color of title and had so remained in possession adversely until the date of the trial of the case.

Mrs. Elmer, Jr., sought to establish title in herself by virtue of the parol gift from her father-in-law under which she claimed to have entered possession sometime in 1919, and that the facts show that she and her husband had remained in joint occupancy of this particular part of the land involved from that time. As the case now stands, the competent evidence of the parol gift to her by her father-in-law is sought to be established by the testimony of F. W. Elmer, Jr. The evidence shows that during the years some repairs were made on the house, a dog house built, fences erected and repaired, and a garage had some repairs made on it. The evidence further shows undisputedly that during his life time, the land was assessed in its entirety, including the part claimed by Mrs. Elmer, Jr., to F. W. Elmer, Sr. After his death, the land was assessed to the estate of F. W. Elmer, Sr., until after the foreclosure under the trust deed executed by the heirs at law. After the foreclosure sale, the land was assessed to, and taxes paid by, Holmes. During the period from 1919 until the date of the trial, although F. W. Elmer, Jr., and his wife were in joint occupancy

of this land claimed by her, they never evinced any interest in the assessment of the land for taxes nor the payment thereof. After the death of F. W. Elmer, Sr., Mr. Enochs, husband of one of the heirs, paid the entire amount of taxes on the estate of F. W. Elmer, Sr. Mrs. Elmer's testimony is to the effect that she and her husband thought that his interest in the personal estate was sufficient to pay the taxes. There does not appear to have been any claim on the part of F. W. Elmer, Jr., to his cotenants that such was the case. Mrs. Elmer did not pay any insurance upon the house. She called upon Holmes and his agent to repair the house on occasions, which was done at the expense of Holmes. There was no corroboration of F. W. Elmer Jr.'s testimony, with the exception of one witness, who, as a workman, made some repairs on one occasion. He testified that F. W. Elmer, Sr., told him he had given that particular lot to Mrs. Elmer. On the date of the execution of the deed of trust in favor of Holmes, F. W. Elmer, Jr., executed that deed of trust with the other heirs. This deed of trust was a warranty of the title so far as he was concerned. When the foreclosure proceedings were instituted, F. W. Elmer, Jr., appeared in court and undertook to represent a sister who was a resident of a foreign land. Not once during the foreclosure proceedings was there a hint that Mrs. Elmer, Jr., was claiming the title to this land by parol gift, coupled with ten years' adverse possession.

There is not a line or syllable of evidence to show that Mrs. Elmer, Jr., made any claim as against her husband, F. W. Elmer, Jr., that indicated in any way that she was claiming adversely to, and exclusively from, F. W. Elmer this land.

There is much evidence in the record given by neighbors and various people as to the reputation of the contending parties in that community, and as to the ownership of the land. The evidence as to reputation of all parties concerned was of little value. Mrs. Elmer testified to having leased the riparian rights on occasions to

the American Legion and various people. She received a box of candy on one occasion. But, none of this evidence was such as to indicate a situation different from that of any other tenant in common occupying the premises, so far as the other tenants in common were concerned.

Stress is laid upon the fact that F. W. Elmer, Sr., during his lifetime, had given several of his children homes, and that there had been no discussion of it in the family. On the other hand, stress is laid upon the fact that in every case in which such a gift of a home was made, a deed was executed by him showing that he thoroughly understood the laws of the State regarding titles.

The decree of the court below sets forth fully that the chancellor declined to accept the evidence of F. W. Elmer, Jr., as to a parol gift to his wife of the land in controversy. In so far as the chancellor's finding on that evidence is concerned, we must say that until the institution of the unlawful entry and detainer suit, every act of F. W. Elmer, Jr., was perfectly consistent with his claim to occupancy of the premises involved as a tenant in common; and, on the other hand, Mrs. Elmer's acts and declarations were consistent with and not hostile to, nor exclusive, so far as her husband was concerned.

When F. W. Elmer, Sr., died, Mrs. F. W. Elmer, Jr., had nothing by virtue of a parol gift, and had nothing by virtue of her occupancy of the premises. Ten years had not elapsed. And, upon that date, F. W. Elmer, Jr., and the other heirs at law became vested with the title to these lands as tenants in common, subject only to sale for payment of debts under proper conditions.

The chancellor was justified in finding from the evidence, even if it be said there was a conflict therein, that never by word or act did F. W. Elmer, Jr., indicate an intention to his brothers and sisters of ousting them from this part or any other part of the lot of land sought to be partited. On the other hand, his every act indicated the converse.

Under Section 2111, Code of 1930 (Sec. 2763, Code of 1906), we find the governing law, as follows: *"Land conveyed only by writing.*—An estate of inheritance or freehold, or for a term of more than one year, in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered." There is no contention that anything was written by F. W. Elmer, Sr., conveying this land to his daughter-in-law.

It is settled law in this State that a parol gift of land, where the donee goes into possession, accompanied by ten years' adverse possession, will vest the title in the donee. See Section 2287, Code of 1930.

Under the circumstances of this case, the matter of the assessment and payment of taxes is potential. See McCaughn v. Young, 85 Miss. 277, 37 So. 839, and Native Lbr. Co. et al. v. Elmer, 117 Miss. 720, 78 So. 703. In the latter case, it was held that "Payment of taxes on land for twenty-four successive years by the party in possession is powerful evidence of the claim of right to the whole lot upon which the taxes were paid, and it is some evidence that the possession was under a claim of right and was adverse." The chancellor was warranted in finding, and could not have found otherwise, that F. W. Elmer, Sr., during his lifetime, representatives of his estate after his death, and Mrs. Holmes, who acquired title, had paid the taxes, and had prevented the land from being lost to all of the parties in interest by redemption thereof from sales of lands for taxes. In this case, the segregation and the assessment was the one thing that Mrs. Elmer could have done that would have been an open declaration and evidence of ouster as to the other cotenants and parties in interest if she were claiming title thereto in good faith. She occupied the place with her husband, who was a lawyer in active practice. It was necessary for her, after the death of her father-in-law, to do such acts and make such claims as would evince to her husband that she was claiming adversely as to his

claim of a one-seventh interest in this land cast upon him by the laws of inheritance. No such evidence appears.

In this State, it may well be doubted that where husband and wife occupied lands as a homestead, in joint occupancy, that either the one or the other could acquire title by adverse possession, but for fear that such a case might arise, and exceptional circumstances be shown, we do not decide this question. The burden of proof in this case was upon Mrs. Elmer to establish the parol gift, and adverse possession by her, beginning as against her father-in-law during his lifetime, and continuing as against the heirs at law and tenants in common after his death, and until the period of limitation had fully expired. We are cited to no case that would authorize us to reverse the chancellor on his finding of fact and of law. The possession of Mrs. Elmer as against the tenants in common, including her husband, must have been shown to have been adverse to the claim of the heirs at law without notice that she was claiming antagonistic to them. There is slight evidence, if any, of any such antagonistic claim. Bentley v. Callaghan's Ex'r, 79 Miss. 302, 305, 30 So. 709, and authorities therein cited. We are of opinion that the court below was manifestly right in its holding on the questions presented—as to whether there had been a parol gift to constitute color of title, and whether there had been ten years' adverse possession under the statute.

The chancellor held that since the date of the execution of the deed of trust to Holmes, under and through which Mrs. Holmes claims title to the one-seventh interest owned by F. W. Elmer, Jr., in this land, the charges against his interest were far in excess of his one-seventh interest, and the purchase price at the partition sale had paid for that one-seventh interest. In other words, we do not think Mrs. Elmer can complain because the homestead right was accorded F. W. Elmer, Jr., in this case, and Mrs. Holmes, the complainant in the court below, has not attacked that part of the decree here. We find no reversible error herein.

Affirmed.