KORNEGAY *v.* MONTGOMERY.

(Division B. March 15, 1943.)

[10 So. (2d) 423. No 35113.]

John D. Greene, Jr., and Will E. Ward, both of Stark-ville for appellant.

276.

Daniel & Bates, of Starkville, for appellee.

**Anderson, P. J.**, delivered the opinion of the court.

Appellant Kornegay brought this suit against appellee Montgomery in the circuit court of Oktibbeha County to recover the statutory penalty and actual damages for cutting 21 pine trees on his land. The trial resulted in a verdict and judgment for Montgomery, from which judgment Kornegay appeals.

Montgomery owns 80 acres of land and of the 80 acres adjoining it on the east Kornegay owns the north 63 acres. In 1940 Montgomery cut 21 pine trees off of a strip of land between the 80 acres and the 63 acres 23 feet wide and extending the whole length of the 63 acres. The question was who owned this 23 foot strip. The evidence for Kornegay tended to show that in 1927 or 1928 he had the line run between the two pieces of land by a civil engineer, which survey showed that the strip of land in question belonged to his 63 acre tract and that since that time and up to the bringing of this suit in 1941 he had claimed it and exercised acts of ownership over it by cutting fire wood therefrom and fighting fires to protect the timber. He admitted in his testimony that when that survey was made he built a fence between the two tracts of land but set it back about 23 feet from his west line in order to make a roadway for his tenants. The evidence showed without conflict that for more than 10 years before this suit was brought Kornegay's fence was located that distance east of the line claimed by Montgomery to be the true line. In 1940 Kornegay had a civil engineer to run the line again. This survey showed the line to be approximately 23 feet west of the fence. This survey resulted in the suit.

On behalf of Montgomery the evidence tended to show that after the survey in 1928 he never heard of Kornegay making any claim to the strip of land and on the contrary that both of them recognized and acted on the fence as the line. He testified that he cut timber from it and exercised other acts of ownership covering a period of

more than 10 years before the suit was brought. The verdict of the jury, of course, resolved the issue of fact in favor of Montgomery.

Kornegay bases his right to a reversal upon the giving of three instructions for Montgomery, one of which is in this language: ''The court instructs the jury for the defendant that you cannot find for the plaintiff anything more than the actual value of the trees alleged to have been cut, at the time they were cut, unless you believe from a preponderance of the evidence that the defendant, W. N. Montgomery, wilfully trespassed upon the land of plaintiff, Tom Kornegay, and you cannot find for the plaintiff, for even the value of the timber unless you further believe from a preponderance of the evidence that the land from which said timber was removed was within the land owned, by him, or that he held the same by actual, adverse, open, and notorious possession for a period of ten years before said timber was removed, and that at no time did he abandon the property, with the intent to abandon, during said period of 10 years.''

The other two instructions complained of are in substantially the same language; we, therefore, set out only one of them: ''The Court instructs the jury that an agreed line is just as good and binding, as an established line even by Government monuments or surveys; and if you believe from all the evidence in this case that the fence has been erected for ten years or more as the agreed boundary between the properties of the parties to this suit, then such fence represents the true boundary, and no survey no matter how accurate, can disturb such established line, or legally change the same, so far as this suit is concerned.''

The criticism of the first instruction is that it fails to properly define title by adverse possession in that it should have included ''(1) actuality, (2) openness and notoriety, (3) exclusiveness, (4) duration and continuity, and (5) hostility.'' The criticism of the other two is they ''were calculated to leave on the minds of the jury the

impression that the very fact of a line having been run constituted an agreement that any fence erected at the time should constitute the boundary between the two properties.'' There is no merit in either criticism. We are of opinion that the language used by the court in Mc-Caugh v. Young, 85 Miss. 277, 37 So. 839, 842, shows there is no merit in the criticism of the instructions: ''The underlying principle on which is founded the rule requiring that possession must be open and notorious before it can be considered adverse to the real owner is that such character of possession is presumptive notice to the true owner of such possession and adverse claim. But the rule does not apply in cases where the party against whom the adverse claim is asserted has actual knowledge of such adverse possession. A possession which is adverse and actually known to the true owner is equivalent to a possession which is open and notorious and adverse. Dausch v. Crane, 109 Mo. [323], 336, 19 S. W. 61; Clark v. Gilbert, 39 Conn. 94; Alexander v. Polk, 39 Miss. 737; Ford v. Wilson [35 Miss. 490, 72 Am. Dec. 137], supra. The doctrine is concisely stated in this form: 'If the owner have actual knowledge that the possession is adverse to his title, the occupancy need not be open, visible, and notorious. Notoriety is important only where the adverse character of the possession is to be brought home to the owner by a presumption.' See 1 Cyc., p. 999, par. c, and cases cited.''

Affirmed.