CHATMAN, et al. v. CARTER, et al.

In Banc. April 24, 1950.

No. 37467 (45 So. (2d) 841)

L. A. Whittington, for appellants.

20

Engle, Laub, Adams & Forman, for appellees.

**Lee, J.**

Lizzie Chatman and others, representing all the interests of the heirs of Monroe Chatman and wife, Mahaley Chatman, as complainants in the court below, filed their original and amended bills against Fred A. Anderson, Jr., and Hillary W. Carter to confirm their title to 46 acres of land, described in the bills, and to

cancel an oil lease and a warranty deed held by them, respectively, on 15 acres of the tract.

The answers set up that Ben Chatman, a son of Monroe, owned the 15 acres in controversy at the time of his death, which was prior to the death of Monroe; that the land passed to Eliza, the widow of Ben; that thereafter until his death, Monroe recognized Eliza as the owner; and that by adverse possession thereafter, Eliza and her successors perfected their title to the land.

There was no dispute in the following facts: Monroe Chatman owned all of this land. When Ben married, he and his wife, Eliza, moved into a house, situated on the 15 acres. They farmed the land, or a part thereof. In addition to cultivating this land, he was a charcoal burner, and used pine timber on the land for this purpose, which was his principal means of livelihood. On April 14, 1924, he died, and his widow, Eliza, continued to live on the place, using it as she and Ben had done before his death. On June 7, 1933, Monroe died. Thereafter, on September 27, 1933, Eliza executed to Fred A. Anderson, Jr., a deed to a ½ interest in the oil and gas rights on the 15 acres. The estate of Ben Chatman, or Eliza Chatman, paid the taxes from 1932 through 1945. The assessment to the estate of Ben Chatman had appeared on the roll prior to Monroe's death. Eliza died in 1942 or 1943, leaving Jeffie Anderson as her sole heir. He, in turn, executed the deed to Hillary W. Carter on January 23, 1946.

The proof by the complainants was to the effect that Ben and Eliza, after their marriage, moved on the place by the permission of Monroe; that any possession which they obtained was permissive; that after Ben's death, Eliza asked Monroe if she must move, and that he told her she could stay there as long as she lived, and at her death, the land would go to his heirs. They also contended that the description, "15 acres in the western corner of" the 46 acre tract was absolutely void.

The proof by the defendants was to the effect that Monroe made a parol gift of the land to Ben; that he and Eliza went into possession, farmed, burned charcoal, paid taxes, partly fenced, and exercised all acts of ownership thereover of which it was susceptible. They offered four deeds of trust and timber deeds executed by Monroe, et ux., of record in the county, in each of which the 15 acres in the western corner had been excepted, and in which instruments, "being now occupied by Ben Chatman" also appeared. These instruments covered the period from March 6, 1918, to April 26, 1926. They also introduced another record deed of trust of date of September 24, 1929, executed by Monroe et ux., with a like exception of the 15 acres and occupancy by Ben. After this exception, the following covenant appeared: "It is the true intent to convey all land in Adams County, Mississippi, now owned by Monroe Chatman and Mahaley Chatman, or either of them". These instruments were offered as corroboration of the alleged parol gift.

From this proof, the defendants contended that there was a parol gift followed by adverse possession, which ripened into a good title. But also, if they were mistaken in this regard, when Eliza executed the oil and gas deed to Anderson on September 23, 1933, such act constituted ouster; and her adverse possession thereafter ripened into a good title.

The whole controversy was over the 15 acres. There was no dispute that complainants owned the remaining 31 acres. The defendants neither sought nor obtained any affirmative relief. While the defendants showed that they were in possession of some land, they did not show a sufficient description thereof. The proof by the complainants was to the effect that they owned the 46 acres; by the defendants, that they owned 15 acres, in their possession.

In this situation, the court decreed that the "complainants have no claim, right, title and interest to the land described in the bill of complaint filed here-

in.'' By adjudging that the complainants had no claim, right, title and interest to the land described in the bill of complaint, the decree not only did not grant any relief to them, but also put a cloud on their title to the 31 acres about which there was no controversy. The complainants were worse off when the trial ended than they were when it started, even though nothing in the evidence attacked their title to the 31 acres.

This was such a palpable error that we could, under no circumstances, affirm the case, even though there is grave doubt as to whether it was sufficiently assigned. We must, therefore, reverse the case.

The governing principles in a re-trial of the case should not be overlooked.

Objections were made to the testimony of the defendants, Anderson and Carter, with reference to what Monroe had said about giving the land to Ben and pointing out the boundaries, and what Eliza said about owning the land. Rulings were reserved in some instances. However, from the whole record of the trial, it is obvious that the court considered this testimony in arriving at a decision in the case. ██ This evidence went to the question of establishing their claims, which grew out of the alleged parol gift to Ben, and which merged with the subsequent adverse possession of Eliza, against the estate of Monroe Chatman, deceased. For that reason, the objections should have been sustained. Section 1690, Code of 1942. On a re-trial of this case, these witnessess should not be permitted to testify to any fact in defense of their claims against the estate of Monroe Chatman.

It was not shown just when Ben moved on the land. The first deed of trust, excepting the 15 acres ''being now occupied by Ben Chatman'', was dated March 6, 1918, and Ben died April 14, 1924. Thus, only 6 years elapsed. ██ A claim of title under a parol gift, accompanied by entry and adverse holding for 10 years, ripens into a good title. Davis v. Davis, 68 Miss. 478, 10 So. 70; Brooks-Scanlon Co. v. Childs, 113 Miss. 246, 74 So. 147,

2 A. L. R. 1453; Elmer v. Holmes, 189 Miss. 785, 199 So. 84. But, under the present record, the proof was not sufficient to comply with these authorities. And the clearest and most satisfactory evidence is required as to the fact of gift, the identity of the land, and the exclusiveness of the possession. 28 C. J. 680. See also 38 C. J. S., Gifts, Section 57, page 843.

 The execution of an oil and gas deed by Eliza on September 27, 1933, was evidence of ouster. Peeples v. Boykin, 132 Miss. 359, 96 So. 177. This act, combined with the payment of taxes and acts of ownership over the land thenceforth made an issue as to whether or not the title ripened. Kornegay v. Montgomery, 194 Miss. 274, 12 So. (2d) 423; Snowden & McSweeney Co. v. Handley, 195 Miss. 682, 16 So. (2d) 24; Louis Cohn & Bros. v. Peyton, 145 Miss. 261, 110 So. 509. It was held in Daniels v. Jordan, 161 Miss. 78, 134 So. 903, that a person in adverse possession of land for more than 10 years becomes the owner of the land in his possession, though not in the calls of his deed. In Kersh v. Lyons, 195 Miss. 598, 15 So. (2d) 768, it was held that the adverse possessor could claim title by adverse possession to such portion only as was actually and continuously used, cultivated or occupied adversely to the owner of the record title.

Consequently, on another trial, proof by the appellees as to the land adversely possessed by them will be admissible. A proper description thereof can be obtained by a survey.

Reversed and remanded.