SHIPMAN *v.* LOVELACE, et al.

May 5, 1952.

No. 38406 (58 So. (2d) 657)

242

Howie, Howie & Montgomery, for appellant.

Wells, Thomas, Wells & Smith, for appellees.

**Lee, J.**

James L. Lovelace and others filed their bill against Mrs. Jeanette Lovelace Shipman to have themselves adjudged the true owners of a parcel of land; to cancel the claim of the defendant as a cloud on their title; and to enjoin her from interfering with the use, occupancy and enjoyment of the property. She made her answer a cross-bill, and not only denied the material allegations of the original bill, but set up that she was the true owner of the parcel of land, under a parol gift and adverse possession. At the conclusion of the evidence, the court granted

the relief prayed for in the original bill, and dismissed the cross-bill with prejudice. From the decree entered Mrs. Shipman appeals.

In 1921 J. L. Lovelace, Sr., was the owner of Lot 2, Block R, West End Survey in the City of Jackson. The next year he built a house for his daughter, Mrs. Shipman, on the north half of the lot. He personally superintended the construction. He installed the sewerage line across the south half of the lot, to the adjacent street, and established a driveway across the west end of the whole lot. Appellant's husband executed notes to Mr. Lovelace for the cost of the construction and other improvements.

When the house was completed the Shipmans moved in. They terraced the south half of the lot, put out the border, set out trees, planted a rose and flower garden and kept and maintained the same ever since. In like manner, they have also been using the driveway for egress and ingress and for parking their car.

On January 29, 1926, Mr. Lovelace and wife executed and delivered to Mrs. Shipman a deed to the north half of the lot, with vendor's lien retained to insure payment of 44 monthly notes. Shortly thereafter, the Shipmans procured a loan and paid the notes.

Mr. Lovelace died testate on August 8, 1930, leaving all of his property to his widow, Mrs. Isabel T. Lovelace. Thereafter, on December 4, 1939, she conveyed the south half of the lot to her son, William Thompson Lovelace, who, in turn, conveyed the same to his brother James L. Lovelace on September 18, 1950.

Appellant contends that her father not only gave her the north half of the lot, for which she had a deed, but that he also gave her the south half, and that she went into possession, has held it adversely ever since, has exercised every act thereover of which said lot is susceptible, and that she has now acquired full title. Several witnesses testified as to the use which Mrs. Shipman made of the property, and to uphold her contention. To estab-

lish the gift, her husband testified that, in several discussions of the matter, Mr. Lovelace said that the property was Mrs. Shipman's and that he had given it to her. He further testified that, at the time of the execution and delivery of the deed, he noted that only the north half was included, and that he asked his father-in-law about the omission. Whereupon Mr. Lovelace stated that he had already given the other part of the lot to Mrs. Shipman, but that he "could not deed it to her at the time because his wife had raised so much sand".

As against appellant's version of gift and adverse possession, Mrs. J. L. Lovelace, Sr., testified that the possession was permissive only; that instead of her "raising sand" about the lot, she and her husband had, in fact, never discussed the use to be made of the south half between the time of the erection of the house and his death. She further testified that five or six years before she deeded the property to her son, William Thompson Lovelace, in 1939, she contemplated erecting a duplex on the south half and had plans prepared for that purpose; that she told Mrs. Shipman about her plans, and discussed the matter with her; that Mrs. Shipman offered no objection and made no claim whatever to the property. She also testified that she and her son paid all of the taxes, and as proof, she offered in evidence paid tax receipts from 1929 to date.

In rebuttal, Mrs. Shipman testified that her mother's testimony in court that day was the first time she had ever heard of the plans to build a duplex on the property; nor did she know that her brother, William Thompson Lovelace, had a deed until just before this trouble arose between them. However, on cross-examination, she admitted that, on April 18, 1946, she wrote a letter to this brother in which she said in part: "We are having to build a garage to house our new Mercury. Before we cut through the east terrace, Smylie suggested that I ask you if you'd care to sell the corner. If you do, please let me know and what you want for it." The issues of

adverse possession and parol gift were in sharp dispute—as to the latter, the two versions are irreconcilable.

While a good statement may be found in 2 C. J. S., Adverse Possession, Sec. 109, p. 661, with reference to the presumption in regard to a child's possession of a parent's land, there is no occasion to deal with that question here. As was said by this Court in Randall v. Mitchell, Miss., 41 So. (2d) 44, 46, ██ ██ "when the facts are in evidence presumptions must disappear and yield to the facts."

This Court has long recognized that a claim, even under a parol gift, under certain conditions may ripen into a good title. In the recent case of Chatman v. Carter, 209 Miss. 16, 45 So. (2d) 841, 844, it was said: ██ ██ "A claim of title under a parol gift, accompanied by entry and adverse holding for 10 years, ripens into a good title." Davis v. Davis, 68 Miss. 478, 10 So. 70, Brooks-Scanlon Co. v. Childs, 113 Miss. 246, 74 So. 147, 2 A. L. R. 1453, and Elmer v. Holmes, 189 Miss. 785, 199 So. 84, were used as documenting authorities.

But in Chatman v. Carter, supra, the requisite kind, nature and degree of proof was pointed out. It was there said that "the clearest and most satisfactory evidence is required as to the fact of gift, the identity of the land, and the exclusiveness of the possession." See the authorities there cited.

██ ██ In view of the sharp dispute and the irreconcilability of the two versions, we can not, on this record, say that the appellant met the burden of proof as to the alleged gift, under the above stated rule. On the contrary, the learned trial judge had the witnesses before him, with the opportunity to observe their demeanor. We are not justified, therefore, in disturbing his finding thereon because it cannot be said that he was manifestly wrong. Muse v. Alexander, Miss., 56 So. (2d) 804; Newton Coca-Cola Bottling Co. v. Murphrey, Miss., 55 So. (2d) 485; Butler's Estate v. McQuarters, 210 Miss. 86, 48 So. (2d) 617.

However, the final decree cancelled and annulled all right, title and interest of the appellant in and to the said parcel of land, and enjoined her from interfering with or disturbing in any way the appellee's use, enjoyment and ownership.

In her answer and cross-bill, appellant alleged that the sewerage line was installed and the driveway was laid out under the personal supervision of Mr. Lovelace himself. The proof showed that he put down the sewerage line from the house across the lot to the adjacent street; that he located the driveway on the west end of the lot for a particular purpose, so that wagons could get into the street; and that he did not want the driveway changed. Undoubtedly he intended that it should serve as the means of egress and ingress for both lots. Mrs. Lovelace admitted that she helped to supervise the building of the house. Thus she must have had full knowledge as to the location of both the sewerage line and the driveway. It is a proven fact that the Shipmans paid for the cost of the sewerage line and its installation, and that they have used it without interruption ever since. The vehicles which delivered the lumber and materials for the construction of the house used the driveway. Moreover, it has since been the sole access for the delivery of coal, wood and groceries. It is "blacked" where it passes over the terrace. It has been used through the years by the Shipmans as a place to park their car. It is undisputed that their use has been without restriction for nearly thirty years.

The house, without sewerage, would have been incomplete, just as, without egress and ingress, it would have been of little value. The sewerage line and driveway are so connected with the use of the house as to constitute essential and necessary adjuncts thereto. The difference in the proof as to the nature of the possession of the lot proper, and as to the sewerage line and driveway is, that in the former, the Lovelaces did not put Mrs. Shipman in possession thereof—it is a disputed issue as

to whether or not there was a gift followed by adverse possession. But, in the latter, they put her in full possession of certain adjuncts of her lot, essential and necessary to the free and normal use and enjoyment of the same. It is not reasonable to view that possession as mere permissive.

The evidence for the appellees wholly failed to show that they were entitled to strip the appellant of her right to retain, repair, maintain and use the sewerage line from her house across the south half of the lot, or that she should be denied a free and unobstructed driveway over the 15 foot strip across the back or west end of the lot. The relief granted was in excess of that which was justified by the evidence, and to that extent, the decree of the lower court is manifestly wrong. The prayer for general relief in the cross-bill was a sufficient basis of pleading for the granting of relief to appellant in those two instances.

It, therefore, follows that the decree of the lower court should be, and it is, modified here so as to preserve the right of the appellant to retain, repair, maintain and use the sewerage line from her house across the south half of the lot and so as to preserve her right to a free and unobstructed, though not exclusive, driveway over the 15-foot strip across the back of west end of the lot.

Decree modified, and as modified affirmed.

**Alexander, Kyle, Holmes** and **Arrington, JJ.,** concur.