912 So.2d 192 (2005)
Cliff TUBB, Appellant
v.
MONROE COUNTY ELECTRIC POWER ASSOCIATION, Appellee.
No. 2004-CA-00524-COA.
Court of Appeals of Mississippi.
October 4, 2005.
*194 L. Caveness McElroy, attorney for appellant.
C. Michael Malski, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. The Monroe County Electric Power Association (MCEPA) filed suit in the chancery court of Monroe County seeking to have the court determine the width of an easement across the land of Cliff Tubb. The chancellor determined that MCEPA was entitled to a fifty-foot easement by necessity across Tubb's land. From this determination Tubb appeals claiming the following errors:
I. The chancellor erred in relying on the unrecorded easement in possession of MCEPA as against Cliff Tubb in awarding the 50-foot easement to MCEPA
II. Whether or not the trial court erred by granting to the Monroe County Power Association a fifty foot easement by necessity
III. That the chancellor refused to consider Cliff Tubb's Counter-Complaint for inverse condemnation, as such a cause of action can only be brought against a governmental agency.
IV. The chancellor erred in ignoring the appellant's counterclaim for inverse condemnation by awarding the appellee a 50-foot easement by necessity without paying the appellant just compensation for the increase in the width of the easement from 14 to 50 feet
V. The chancellor erred in refusing to consider the appellant's counter-complaint for inverse condemnation and in denying the appellant's request for a jury trial in regard to the counter-complaint for inverse condemnation
¶ 2. Finding that Tubb's issues overlap, this Court has recast them into only two issues, those being: (1) whether the trial court properly held that MCEPA had an easement on Tubb's land and (2) whether Tubb was entitled to compensation for inverse condemnation.
¶ 3. Finding that the chancellor correctly noted the parties' agreement as to the existence of an easement, and that the enjoyment of that easement of necessity required a fifty-foot easement, this Court finds no error, and affirms.

STATEMENT OF THE FACTS
¶ 4. MCEPA is an electric power association providing electricity to some 11,000 customers in Monroe County. The majority of MCEPA's customers and power lines are located east of the Tennessee-Tombigbee Waterway. One of MCEPA's primary three-phase power lines crosses the property of Tubb to serve a pocket of customers in the Coontail Community on the west side of the waterway. This line is the only power source for the customers. A three-phase line is one that is a distribution line that carries more than 600 volts.
¶ 5. In 1950 the power line, which is the focus of this suit, was constructed pursuant to an easement given to MCEPA by the former owner of the property, Dr. M.Q. Ewing. When originally built, the power line was to serve thirty-seven customers on the west side of the Tombigbee River. Since 1950 the number of customers has grown to 175, which, among other reasons, caused the MCEPA to increase *195 the voltage from 7.2 to 14.4 phase neutral. The owners of the land from 1950 to 1990 grew row crops or had cows on the land. Tubb's father bought the land in 1990 and deeded it to Tubb in 1993. At first Tubb grew row crops, but in 1997 or 1998 he had pine trees planted on the land. Some of the trees were planted directly under the power line.
¶ 6. MCEPA attempted to cut the trees in 2000, contending that the pines trees were on its right-of-way and would eventually grow and interfere with and prevent the maintenance of its power line. Tubb prevented MCEPA from cutting the trees. MCEPA then filed for a declaratory judgment as to its easement over Tubb's land.
¶ 7. Tubb claims that the easement is fourteen feet in width while the MCEPA claims an easement of fifty feet, twenty-five feet on each side of the power line. The parties stipulated that MCEPA had an easement, but asked the court to decide the width of the easement.
¶ 8. A forester testified that in fifteen years Tubb's trees planted on the easement right-of-way would be forty-five feet tall, and in twenty-five years they would be from fifty-five to sixty-five feet with limbs that extend twenty-five feet. The assistant manager of the power association who had viewed the property testified that the trees were four to six feet from touching the power line. He stated that if the trees touched the power line, there would be a short which would knock out the power to all of the customers serviced by that line. He testified that the 2002 National Electric Safety Code, published by the Institute of Electrical and Electronics Engineers, Inc. stated that trees which interfere with the electricity supply should be cut. He testified that the U.S. Department of Agriculture Specifications and Drawings for 24.9/14.4 KV Line Construction publication requires that the area under a power line be trimmed of all trees so the right-of-way is free from vegetation close to the ground.
¶ 9. The MCEPA engineer testified that while a right-of-way easement could be less than fifty feet, the easement for a three-phase line was always fifty feet. He said that a fifty-foot easement was necessary to repair the lines and allow for vehicles to assist in the repair. The assistant manager testified that a fifty-foot easement was the standard which MCEPA used for three-phase power distribution lines like that on the Tubb property.
¶ 10. The chancellor noted that there had been proof of the need for the fifty-foot easement by MCEPA, but that Tubb had not provided any proof for his claim that the easement should be fourteen feet wide. The chancellor awarded a fifty-foot easement by necessity to MCEPA finding that the width was needed in order to maintain the power line. The chancellor also issued an injunction prohibiting Tubb from obstructing or interfering with MCEPA's use of its easement.

ANALYSIS
¶ 11. The factual findings of a chancellor will not be disturbed on appeal unless the findings are manifestly wrong, clearly erroneous, an erroneous legal standard was applied or there has been an abuse of discretion. Gulf Coast Research Laboratory v. Amaraneni, 877 So.2d 1250, 1252 (¶ 8) (2004). This Court will not reverse a chancellor's findings of fact if they are supported by substantial credible evidence. Hammett v. Woods, 602 So.2d 825, 827 (Miss.1992). This Court must look at the entire record and accept the evidence which supports or reasonably tends to support the findings of the chancellor, together with all reasonable inferences which may be drawn therefrom and which favor the chancellor's findings of fact. Clark v. *196 Myrick, 523 So.2d 79, 81 (Miss.1988). However, this Court reviews questions of law de novo. Dieck v. Landry, 796 So.2d 1004, 1007 (¶ 7) (Miss.2001).

I. Whether the trial court properly held that MCEPA had an easement on Tubb's land
¶ 12. Tubb claims that the court should not have relied on the unrecorded easement of MCEPA since it was not dated, not recorded, lacked consideration and was without notarization. However, the record does not reflect that the chancellor relied unduly on the unrecorded easement.
¶ 13. The parties agreed that MCEPA had an easement across Tubb's property, but were unable to agree upon its width. The following excerpts from the record reflect this agreement:
Chancellor Jacqueline Estes Mask: Is the question before the Court the width of the easement or the fact that an easement exists or not?
Mrs. McElroy [attorney for Tubb]: Well, right
Chancellor Mask: What is the issue before the Court at this point?
Mrs. McElroy: Well, he hasn't established well, you could say they've what it's going to boil down to is the width of the easement, that what we argued in here before last December on
Chancellor Mask: Are you confessing there is an easement? The question is, what is the width?
Mrs. McElroy: Yeah, basically, yes, your Honor, that there is an easement and we've stated that in front of the Court last December. But the question is therewe maintain that there's never been a 50 foot easement.
At another part of the record during the testimony of Tubb the following testimony is found:
Mrs. McElroy: Mr. Tubb, have you ever told me or anybody else that the Monroe County Electric Power Association did not have an easement, that they do notabsolutely have no easement?
Tubb: No.
Mrs. McElroy: You've never stated that, have you?
Tubb: No.
Mrs. McElroy: What is the problem today, to your knowledge?
Tubb: The problem is they're wanting more of an easement than what they actually have.
¶ 14. What the parties were not able to agree upon was the width of that easement. MCEPA presented evidence that the proper upkeep and repair of a utility line of this nature required an easement of fifty feet. After a consideration of the acknowledgment of the easement by Tubb, and the evidence that the proper upkeep and repair of a utility line of this nature required an easement of fifty feet, the chancellor found that of necessity a width of fifty feet was required for MCEPA to make use of its easement.
¶ 15. An easement by necessity "includes the right to exercise all the incidents necessary for the full enjoyment of that easement, one of which incidents is ready accessibility to the line for maintenance and repair[.]" Sumrall v. United Gas Pipe Line Co., 232 Miss. 141, 147, 97 So.2d 914, 916 (1957). The owner of the dominant estate, MCEPA, has the burden of maintenance and repair and because of this the dominant owner also has an implied secondary easement to enter the servient property to perform the necessary maintenance and repairs. Fourth Davis *197 Island Land Co. v. Parker, 469 So.2d 516, 523 (Miss.1985). An implied easement may be highly convenient or essential to the full enjoyment of the land. Id. at 521. See also Hutcheson v. Sumrall, 220 Miss. 834, 72 So.2d 225 (1954) (water pipe easement granted); Shipman v. Lovelace, 214 Miss. 241, 58 So.2d 657 (1952) (sewerage line easement granted). The easement of MCEPA would fall within the spectrum of these cases.
¶ 16. Thus having established the easement and the fact that the power company is given the right to use the easement for maintenance and repair, the question for the court was the width of the easement.
¶ 17. It is well established that the same rules of construction apply to the construction of easement grants as apply to contracts. Sigal v. Mfrs. Light and Heat Co., 450 Pa. 228, 299 A.2d 646, 649 (1973). Where the width of the easement is unambiguously specified in a grant, the grantee is restricted to that width even if it is insufficient for the purposes for which the easement was granted. Zettlemoyer v. Transcontinental Gas Pipeline Corp., 540 Pa. 337, 657 A.2d 920, 924 (1995). But where the grant is silent, there is an ambiguity and the intentions of the parties must be determined. Id. When the width of the easement is not specified in the grant, the easement "will be held to be of such width as is suitable and convenient for the ordinary uses of free passage[.]" Id.
¶ 18. There was no specific proof by either party as to the dimensions of the easement granted. It therefore fell to the trial court to attempt to ascertain the intent of the parties. The trial court, by implication, held that it was the intent of the parties that the easement be sufficiently broad to keep up and repair the lines of MCEPA.
¶ 19. MCEPA called two witnesses to testify about the width. First Barry Rowland, the assistant manager and system engineer for MCEPA, testified that the utility had always maintained a fifty-foot easement for a three-phase line like that in the case sub judice. He said that industry standards required the removing, clearing and trimming of trees from the right-of-way because such vegetation is a fire hazard. He said typically the width of the easement is fifty feet.
¶ 20. Kenneth Miller, an MCEPA board member, and former MCEPA employee of thirty-six years, testified that not less than fifty feet was the correct easement for a three-phase power line. He testified that such distance was needed to get to the lines to repair equipment in the area. Miller said that trees growing under power lines could grow to a height to hit the lines causing a power failure.
¶ 21. Tubb offered no evidence regarding the width of the easement except he stated that he "thought" it was fourteen feet. His father testified and offered no testimony about the width of the easement with his testimony being essentially about how the land was acquired.
¶ 22. Weighing credible evidence against no evidence, the chancellor correctly ruled that the width of the easement should be fifty feet.

II. Whether Tubb was entitled to compensation for inverse condemnation.
¶ 23. Tubb argues that his counterclaim for inverse condemnation should have been recognized and he should be compensated for the increase in the width of the easement from fourteen feet to fifty feet. We disagree.
¶ 24. An examination of the facts shows that the previous owner of the property *198 gave MCEPA an easement in 1950. The power company put up lines, provided power to customers and even upgraded the lines. The original document setting out the easement of MCEPA was silent as to the width of the easement; however, the evidence by way of witnesses for MCEPA agreed that an easement of fifty feet was necessary for the maintenance of the utility lines. When Tubb took possession of the land the easement was appurtenant. Such easement, in spite of a change of ownership, runs with the land as long as the necessity for the easement remains. Pitts v. Foster, 743 So.2d 1066, 1068 (¶ 7) (Miss.Ct.App.1999). Our supreme court has said that by acquiring the dominant estate, like MCEPA did here, "one has already paid for and procured the legal right of access to and from that parcel." Broadhead v. Terpening, 611 So.2d 949, 955 (Miss.1992). Therefore, Tubb as a subsequent owner of a parcel of land on which there was an easement by MCEPA, could not bring an action for compensation for the easement.
¶ 25. There being no grounds for an inverse condemnation action, the chancellor was correct in not allowing a jury trial.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.