DAVIS v. GULF REFINING Co. et al.

(Division B. October 13, 1947. Suggestion of Error Overruled April 12, 1948.)

[32 So. (2d) 133. No. 36478.]

On Suggestion of Error.

(Division B.   April 12, 1948.)

[34 So. (2d) 731.   No. 36478.]

**Hall, Hall, Callender & Singley,** of Columbia, and **L. F. Easterling** and **J. Ed Franklin,** both of Jackson, for appellant.

**Green & Green, Stone Wells** and **Irwin W. Coleman,** all of Jackson, **T. W. Davis, Jr.,** of Hattiesburg, and **John E. Green, Jr.,** of Houston, Texas, for appellees.

Argued orally by **Lee D. Hall,** for appellant, and by **Irwin W. Coleman** and **Garner W. Green,** for appellees.

**Alexander, J.,** delivered the opinion of the court.

Bill was filed by Willie E. Davis, Jr., and his mother, wife of appellant, naming as defendants the Gulf Refining Company as mineral lessee, certain grantees of mineral interests, and, in anticipation of ultimate partition, the children and heirs of the owner and common title source, D. L. Davis. Appellant was also joined as a defendant, ''if living.'' The purpose of the bill was to establish title in complainants to an undivided one-sixth interest in the lands in question, and cancellation of all

instruments executed subsequent to the death of D. L. Davis insofar as they affect the undivided interest of complainants. The interest of complainants if establish- ed would in fact be an undivided one-seventh, as later indicated.

The land involved is the East half of the Northwest Quarter, and the Northeast Quarter of the Southwest Quarter of Section 7, Township 1 North, Range 16 West, in Lamar County, Mississippi. In view of the discovery and production of oil thereon by the lessee, Gulf Refining Company, complainants offer to pay a ratable share of the expense of such drilling and production.

The appellant here, the assumption of whose death was belied by his appearance, filed an answer adopting largely the allegations of the original bill, and by way of cross- bill asserted ownership of the undivided one-sixth inter- est in himself, utilizing the same bases upon which com- plainants had builded their claim. The original bill was, upon complainants' request, dismissed without prejudice. Answers and cross-bills were thereupon filed by the appellees to the cross-bill of appellant, and there was a decree denying any relief to appellant Willie E. Davis, and decreeing title in the other defendants respec- tively upon their several cross-bills.

A brief deraignment of the respective titles is as fol- lows: The original owner was D. L. Davis who died in- testate in 1924, leaving as his heirs at law his widow, Mrs. Elizabeth Davis, and seven children, among whom was Willie E. Davis, appellant. One of said children died the same year without heirs other than his mother and her other children.

April 4, 1931, all the heirs of D. L. Davis, with the ex- ception of appellant, executed to W. W. Dearman a gen- eral warranty deed to the property above described. This deed was duly filed for record May 6, 1931.

There was testimony, accepted by the chancellor, that Dearman shortly thereafter conveyed the lands to Web- ster Daniels by a deed that was later destroyed by fire.

Daniels sold to Wallace E. Davis by deed filed January 30, 1935. Wallace E. Davis conveyed the lands to Cooper who executed mineral lease to the Gulf Refining Company, and certain mineral deeds.

Original bill was filed January 29, 1945, just one day short of ten years after the filing of the deed to Wallace E. Davis. The chancellor found upon adequate testimony that there had been an open hostile and continuous occupancy of the lands by Daniels and his successors in title since 1931.

Interesting questions would be presented if the claim of adverse possession were confined to the period beginning with the filing of the deed from Daniels to Davis. We are constrained, however, to reject the contention of appellant that the statute was not set in motion by the execution and filing of the deed from the Davis heirs to Dearman May 6, 1931, together with the subsequent adverse occupancy. Such contention is placed upon the ground that, (1) a defect in the acknowledgment divested its recordation of its efficacy as constructive notice, and (2) knowledge by Dearman of the outstanding interest of appellant negatived an intent to claim the entire estate adversely.

As to the first contention, we find no ambiguity nor disabling defect in the acknowledgment which recited that the grantors ". . . acknowleged that they signed and delivered to the foregoing deed," etc. The second contention merits discussion.

The execution of the warranty deed by the heirs of D. L. Davis, as cotenants, to Dearman, a stranger to the title, was an assertion of title and an assumption of dominion which was at once a repudiation of the tenancy and a challenge to the missing cotenant, appellant. Its execution and recordation constituted in legal effect a disseisin and operated as an ouster. Appellant was thereby put upon notice of the asserted claim of his cotenants, and was put under a duty to challenge their assumption by proper proceedings. Harvey v. Briggs,

68 Miss. 60, 8 So. 274, 10 L. R. A. 62; Eastman, Gardiner & Company v. Hinton, 86 Miss. 604, 38 So. 779, 109 Am. St. Rep. 726; Peeples v. Boykin, 132 Miss. 359, 96 So. 177; Shelby v. Rhodes, 105 Miss. 255, 62 So. 232, Ann. Cas. 1916D, 1306; Farnsworth v. O'Neal, 158 Miss. 218, 130 So. 101. Other jurisdictions are in complete accord with this principle, which is supported by the text-writers and encyclopedias.

This is the essence of appellees' claim, and we do not disparage the efforts of appellant, made plausible by zealous elaboration, to undermine the propriety of its application by asserted exceptions, and by an endeavor to deflect the incidence of the doctrine by the force of testimony of actual knowledge and recognition by Dearman and Daniels of the preexisting cotenancy. If such knowledge were in fact had, many authorities deny thereto any controlling relevancy when weighed against the actual implications of the warranty deed. Compare Naylor & Jones v. Foster, 44 Tex. Civ. App. 599, 99 S. W. 114; Jones v. Siler, 129 Tex. 18, 100 S. W. (2d) 352. In view of the finding by the chancellor that neither Dearman nor Daniels knew of and recognized the outstanding title of appellant with a certainty tantamount to waiver, we need not here follow other jurisdictions to the point where even an unequivocal recognition is found not inconsistent with the right of the grantee to depend upon the language and implications of the warranty deed and to assert, as is not uncommon in cases where possession without color of title is made hostile and adverse by the very defiance of another's claim of title, claim to the entire estate.

Appellees' case was found by the chancellor to be strengthened by the actual, as well as constructive, knowledge by appellant of the adverse claim of Dearman & Daniels. It was found that the Davis heirs had given grantees assurance that appellant would later sign the deed or execute quitclaim, and thereby formally ratify their assumption of complete dominion. It was further

found that appellant had written one of the cotenants in 1938 that he would execute a quitclaim deed thereto. It was likewise found that in 1932 appellant visited the lands while occupied by Daniels and observed his manifestations of complete ownership; that neither he nor the other cotentants had demanded any accounting for rents and profits and had left to grantees the responsibility for the payment of all taxes and loans against the lands. Special significance was found by the chancellor in the demand made by appellant of Daniels for the payment of a balance of $75 asserted to be due upon the original purchase from the Davis heirs. Such payment was made to appellant who used same in the purchase of a home for his mother and a sister. From these circumstances the trial court found appellant guilty of laches, and estoppel.

The foregoing incidents are set out merely in order to complete the picture presented by the record. We find that the execution and recording of the warranty deed by the cotenants to a stranger to the title in 1931 set in motion an adverse claim against appellant which was thereupon made available to the grantee, who, by implementing this claim by actual adverse possession through himself and his successors in title for a period beyond the statutory limitation, matured the disseisin into complete ownership. Other points raised by appellant and ably presented are therefore outside our discussion.

Affirmed.

## On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

The suggestion of error raises several points which merit consideration and reply. Comment is made upon our finding that the acknowledgment of the deed from the Davis heirs to W. W. Dearman was adequate to support recordation. We did not set the acknowledg-

ment out in full, and it is contended that the defect is predicated upon that which was omitted. We would substantiate our conclusions were it not for the fact that appellant now asserts that "this is not the point upon which we seek reversal."

Further comment is directed to our assertion that "in view of the finding by the chancellor that neither Dearman nor Daniels knew of and recognized the outstanding title of appellant with a certainty tantamount to waiver . . ." We reexamine this recital only in the interest of accuracy since it was not decision but merely prefatory to our disavowal of a purpose to adopt the rule laid down by the Texas Court.

The chancellor found that "Webster Daniels, at the time he went into possession and at the time of the purchase of this land from W. W. Dearman, did not know that Willie Davis had not signed the deed." It was further found "that they (Wallace E. Davis and Webster Daniels) never recognized the interest of Willie E. Davis." It could be found from the record that Dearman knew that Willie E. Davis had not signed the deed, and therefore an inadvertence may be seen in the statement that Dearman did not know of this omission, yet the record bears out the conclusion that he did not accept or recognize any "outstanding title" in appellant. The point, however, is rendered moot in view of the actual bases for our findings as hereinafter elaborated.

The remaining suggestions of error challenge our right to approve the finding of the chancellor that Daniels paid to or for the account of appellant $75 which was to be applied upon the purchase by appellant from L. W. Cameron of a home for appellant's mother. Regardless of the literal exactness of the statement that the chancellor found that a "demand" was "made by appellant of Daniels of a balance of $75 asserted to be due upon the original purchase from the Davis heirs," the record shows that appellant and his mother went to see Dearman to demand his balance from him. He referred them to his

grantee Daniels. The latter did comply with the demand or request of a payment, and the chancellor's finding that this amount was a balance due upon the ''original purchase from the Davis heirs,'' is amply supported. This amount was not paid directly to appellant but to the grantor, Cameron, for appellant's account.

As stated by us in our former opinion ''The foregoing incidents are set out merely in order to complete the picture presented by the record.'' Our decision related, however, to the effect upon the missing cotenant of the execution and recording of a warranty deed by the other cotenants. The effect of such warranty deed to the whole interest was to challenge the absent cotenant with notice, and to strengthen the claim of the grantee and his successors in occupancy to title by adverse possession. We stated, ''the execution and recording of the warranty deed by the cotenants to a stranger to the title in 1931 set in motion an adverse claim against appellant which was thereupon made available to the grantee, who by implementing this claim by actual adverse possession through himself and his successors in title for a period beyond the statutory limitation, matured his disseisin into complete ownership.'' It was not our purpose to adjudge the effect of such deed absent such occupancy.

The record shows, and the chancellor found, that Wallace E. Davis, through his tenant, entered into actual occupancy in November 1934, which was more than ten years prior to the filing of the bill herein. Such adverse occupancy found to be open, hostile, and notorious needs no deed to support it. Were the extent of such acquired title open to question, the deed of 1931 would be available as color of title to identify such extent.

Overruled.