WALKER, et al. *v.* EASTERLING, et al.

Nov. 17, 1952

No. 38532      8 Adv. S. 31      61 So. 2d 163

430

*Matthew Harper, Jr.,* for appellants.

*W. S. Welch, David C. Welch* and *Denton Gibbes,* for appellees.

Lee, J.

Ray M. Walker and Merle R. Walker, as trustees for Mrs. Minnie Walker and Mrs. Mary T. Walker, by their bill of complaint against Mrs. Julia Easterling and others, the heirs at law of H. C. Easterling deceased, sought (1) to cancel the claims of the defendants to certain lands described in the bill, (2) writs of possession thereto, and (3) a perpetual injunction against the disturbance of their possession. The defendants, in their answer, denied that the complainants were entitled to possession of the land in controversy, and asserted that they were the owners of said land by virtue of a patent from the government and by adverse possession for the

statutory period. At the conclusion of the evidence the chancellor made a finding of fact in favor of the defendants and dismissed the bill of complaint, with prejudice. From the decree entered the Walkers appeal.

The land here in controversy is 23 acres south of Possum Branch in the E½ of SE¼, Section 21, Township 6 N, Range 10 W.

(Hn 1) In 1898, H. C. Easterling obtained a deed to the whole 80. His residence was situated to the east, on another 40, the NW¼ of SW¼ of Section 22. He fenced his entire acreage about 1902. He put 7 of the 23 acres in cultivation, and made the balance available for pasture. He and his wife conveyed the 23 acres to their son, G. B. Easterling, on May 5, 1911. Following mesne conveyances Mrs. Minnie R. Walker obtained a deed thereto on August 12, 1925. However, at no time during this period did H. C. Easterling and wife surrender possession of this land. On the contrary, they remained in possession and continued to cultivate and pasture the same.

Shortly after Mrs. Walker obtained her deed, an attorney who was investigating her title, wrote H. C. Easterling that the government still owned this land. Sometime during 1928, Margie Velma Easterling, a daughter, applied for a patent to the whole 80. She lived in a house and utilized a tenant house on the north 40, and continued to cultivate and pasture the 23 acres. She secured a patent, dated November 19, 1931, and thereafter, on January 21, 1935, deeded the whole 80 to her father. The patent and the deed were filed for record on January 31 and February 3, 1935, respectively. The H. C. Easterlings continued their possession and use of the land until his death in 1942 or 1943, and his widow and children have so continued such possession and use ever since.

After Mrs. Walker obtained her deed in 1925, at no time did she, or anyone for her, demand possession of this land, or demand the payment of rent, or pay the

taxes thereon, or do anything to evidence a claim to the land. If she had seen the land, or made the slightest inquiry about it, obviously she would have ascertained that H. C. Easterling had continued in possession after the deed to his son, and was then in possession, in spite of the fact that there were several holders of deeds intervening between G. B. Easterling and herself. She must have learned from her attorney that no patent to this land had ever been issued by the government, because he so advised the H. C. Easterlings. She must have known, therefore, that, if the government had title to this land, her title was worthless. Her failure to do anything over a period of 25 years in an effort to gain possession of this land is strong evidence that she was not claiming any interest therein.

Besides, when the H. C. Easterlings found out that the government had not parted with the title, they thought that previous conveyances were null and void; and thereafter Margie Velma Easterling obtained title from the government and her patent and the deed to her father were placed of record. Approximately 15 years then elapsed before the complainants attempted to gain possession.

In Batson v. Smith, 211 Miss. 428, 51 So. 2d 749, after the Smiths conveyed the 40-acre tract to Prentice, they continued in possession of 14 acres thereof for more than 30 years, just as the H. C. Easterlings, after the conveyance to their son in 1911, continued in possession about 40 years. In that case, it was said that such a conveyance "does not of itself prevent the grantor from acquiring title by adverse possession against his grantee". It was recognized that neither the relation of vendor and vendee in that deed nor the covenant of warranty therein was sufficient to deprive the Smiths from claiming adversely and relying on the statute of limitations. The opinion cited with approval 2 C. J. S., Adverse Possession, Sec. 95, page 654, which is in part as

follows: **(Hn 2)** *"The grantor's adverse possession may be initiated* by actual notice of hostility, or *by retention of actual possession and exercise of dominion over the property consistent only with a claim of exclusive and adverse right, either being sufficient in the absence of a statutory requirement of actual notice, . . ."* (Emphasis supplied). See also Cummins v. Dumas, 147 Miss. 215, 113 So. 332.

**(Hn 3)** The recordation in 1935 of the patent to Margie Velma Easterling and her deed to H. C. Easterling constituted an act of ouster. In the recent case of Boyd, et al. v. Entrekin, et al., 209 Miss. 51, 45 So. 2d 848, it was said: "When Mrs. Ladner, on March 28, 1902, recorded her deed from Randolph Batson, she gave notice to the world that she claimed to be the owner of the land. That act, as against anyone else claiming the land, was an act of ouster." See also Chatman v. Carter, 209 Miss. 16, 45 So. 2d 841, where it was held that the execution of an oil and gas deed by the claimant was evidence of ouster. See also Peeples v. Boykin, 132 Miss. 359, 96 So. 177; Davis v. Gulf Refining Co., 202 Miss. 808, 32 So. 2d 133; Alewine v. Pitcock, 209 Miss. 362, 47 So. 2d 147.

Neither Mrs. Walker, nor anyone for her, ever demanded that the Easterlings pay rent. And it has been held that the taking of rents and profits in joint tenancy, is a claim of exclusive ownership. Iler v. Routh's Heirs, 3 How. 276.

Mrs. Walker paid no taxes whatever on this land. On the contrary, the Easterlings not only paid all taxes from 1935 to the date of the trial below, but had also paid the taxes from the date of their first acquisition of the property. In McCaughn v. Young, 85 Miss. 277, 37 So. 839, this Court cited with approval certain quotations in Holtzman v. Douglas, 18 Sup. Ct. 65, 42 L. Ed. 466, as follows: **(Hn 4)** "Payment of taxes . . . is very important and strong evidence of a claim of title; . . . the payment of taxes on land for twenty-four successive

years by the party in possession was powerful evidence of the claim of right to the whole lot upon which the taxes were paid." See also Native Lumber Co. v. Elmer, 117 Miss. 720, 78 So. 703.

Appellants cite several cases and rely strongly on Evans v. Shows, et al., 180 Miss. 518, 177 So. 786. In that case, the parties represented by Shows had a perfect record title from the common source, John and Cassie Calvert. The parties represented by Evans claimed as heirs at law of the Calverts and by virtue of a deed which described land in another government subdivision. Both of these claims were held to be insufficient to constitute color of title. There was no proof that the Calverts, after the execution of their deeds, asserted a claim adversely to their grantees, or that prior to their death, during their continuance in possession, they gave any notice of their claim to their vendees. After the death of the Calverts, some of the appellants paid rents. Others used, cultivated and claimed small, scattered patches, without payment of rent, for the statutory period. The opinion held that, in the absence of color of title, the adverse possession which they exercised gave title only to the land which they adversely occupied but that "there was no evidence from which the court below could determine their location". The opinion, however, recognized that the maker of a deed, who remains in possession, may bring notice of his adverse claim to the attention of his grantee, and thenceforth claim by adverse possession the land described in his deed.

The subsequent acquisition of a paramount title from the government, plus the great factual difference as to adverse possession, completely distinguishes the present case from the Evans case, supra.

The decree of the learned trial court is therefore affirmed.

Affirmed.

441

*McGehee, C. J.,* and *Alexander, Kyle* and *Ethridge, JJ.,* concur.