Beth H. SWEETEN, Gordon P. Owen, Jr., and Carolyn Owen, his wife, Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE FOREST SERVICE, Verlin Bowcutt and Jeannette Bowcutt, his wife, Defendants-Appellees.

No. 80–1670.

United States Court of Appeals, Tenth Circuit.

July 27, 1982.

Dwight L. King of King & Peterson, Salt Lake City, Utah, for plaintiffs-appellants.

Dirk Snel, Atty., Dept. of Justice, Washington, D. C. (Sanford Sagalkin, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Ronald L. Rencher, U. S. Atty., D. Utah, Barbara W. Johnsen, Asst. U. S. Atty., D. Utah, Salt Lake City, Utah, Anne S. Almy and Robert D. Clark, Attys., Dept. of Justice, Washington, D. C., on brief), for defendants-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This case involves a boundary line dispute between appellants and the United States Forest Service over a mountainous tract of land in Summit County, Utah. At issue is the proper location of the north-south center line of Section 8, Township 1 South, Range 7 East, Salt Lake Meridian, which divides national forest land and appellants' land.

The land in question was first surveyed for the United States in 1893 by Mr. Jessen, and was patented to appellants' predecessors in interest in 1902. The Bureau of Land Management carried out a dependent resurvey[1] of Section 8 by Mr. Chappell in 1965, which was accepted by the government as official in 1967. In conducting the resurvey, Mr. Jessen's original monuments were located for the NE, SE, and NW corners, as well as for the W1/4 and S1/4 corners of Section 8. The remaining corners, including the disputed N1/4 corner, were reestablished by proportionate measure. Mr. Chappell found a marking stone along the north line, which he thought had once marked the N1/4 corner. He concluded, however, that it had been moved to its present location and was not situated where Mr. Jessen originally had located the N1/4 corner. Finding no indication of the true location of the N1/4 corner, he treated the corner as lost and reestablished the N1/4 point by proportionate measure. Subsequently, in 1974 and 1978, Mr. Manning of the Forest Service surveyed in the north-south center line of Section 8 by running a straight line from the original S1/4 corner to the reestablished N1/4 corner, based on the points established in the 1965 resurvey. Once the north-south center line was in place, the Forest Service notified appellants that they were encroaching about 300 feet, for a total of 6.69 acres, on national forest land. Appellants then brought this Quiet Title Act suit against the government pursuant to 28 U.S.C. § 2409a.[2]

---

1. The power to conduct resurveys is vested in the Secretary of the Interior by 43 U.S.C. § 772, which provides in pertinent part:

> The Secretary of the Interior may, as of March 3, 1909, in his discretion cause to be made, as he may deem wise under the rectangular system on that date provided by law, such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of . . . .

2. This section provides in pertinent part that "[t]he United States may be named as a party

Appellants challenge the Forest Service's actions on two grounds. First, they rely upon the language in 43 U.S.C. § 772, which grants the Secretary of the Interior the power to resurvey or to retrace surveys on public lands, but contains the proviso that: "no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement." Appellants claim that the resurvey relied upon by the government violates this proviso because it reduces the total acreage of the land from that described in the original patent. Second, appellants argue that a fence lying approximately 300 feet east of the reestablished north-south center line constitutes the boundary between their land and national forest land under the theory of equitable estoppel, adverse possession, or boundary by acquiescence.

The district court denied appellants' claim to the disputed land and quieted title in the United States of America. The court's decision was based on its factual finding that Mr. Chappell's dependent resurvey correctly reestablished the N1/4 corner in the position Mr. Jessen placed it in his original survey. This finding was based on evidence that when Mr. Chappell retraced Mr. Jessen's north section line, he achieved a high degree of correlation of calls and bearings to unchanging topographic features. Entries in Mr. Chappell's field notes describe finding the N1/4 corner marking stone lying loosely on the ground, and apparently not in its original position. Mr. Chappell treated the marking stone as a spurious monument and then followed the legally sanctioned method of reestablishing the N1/4 corner by proportionate measure. 43 U.S.C. § 752; see United States v. Doyle, 468 F.2d 633, 638 (10th Cir. 1972). As Mr. Chappell reestablished the N1/4 corner at the midpoint along a straight line between

the original Jessen monuments for the NE and NW corners, the distance from the N1/4 point to a stream corresponds closely to the distance reported by Mr. Jessen from his original N1/4 monument to the stream. Record, vol. 2, at 250. The district court also determined that Mr. Manning, of the Forest Service, followed the legally sanctioned procedures in surveying in the north-south center section line by running a straight line between the reestablished N1/4 corner and the original Jessen S1/4 corner. 43 U.S.C. § 752.

▮▮▮ The actual location of a disputed boundary line is a question of fact. *United States v. State Investment Co.*, 264 U.S. 206, 211, 44 S.Ct. 289, 290, 68 L.Ed. 639 (1924); *United States v. Doyle*, 468 F.2d 633, 636 (10th Cir. 1972). The district court's findings of fact will not be disturbed on appeal unless they are clearly erroneous. Fed.R.Civ.P. 52(a). After reviewing the factual findings of the trial court regarding the location of the north-south center line, we conclude that the district court's findings are not clearly erroneous, and are sufficient to support the court's acceptance of the resurvey as establishing the correct boundary line between appellants' land and United States Forest Service land.

▮▮▮ The district court also determined that the government resurvey merely retraced and reestablished the original Jessen survey, and therefore that the proviso of 43 U.S.C. § 772 provides no relief to appellants. Appellants argue, however, that the reestablished center section line impairs their rights because it reduces the total amount of land conveyed by the original patent from the United States. That patent described the land conveyed not just in terms of legal subdivisions or references to government land surveys, but also described a certain acreage that the patent purported to convey.[3] Essentially, appellants argue

defendant in a civil action ... to adjudicate a disputed title to real property in which the United States claims an interest ...." 28 U.S.C. § 2409a(a).

3. The land patented is described in the following language:

North East quarter of the North West quarter, the South half of the North West quarter and the North East quarter of the South West quarter of Section Eight in Township

that the acreage described in the patents should control, rather than the legal description and the reestablished monumentation on the ground. It is well settled, however, that in the case of a conflict between elements of a land description, the least persuasive type of description is that of the acreage conveyed. *Clark on Surveying and Boundaries* § 308, at 382 (Grimes ed. 1959); C. Brown, *Boundary Control and Legal Principles* § 4.28, at 142 (2d ed. 1969). The notes, lines and descriptions in an accepted survey are part of the land patent. *United States v. Reimann*, 504 F.2d 135, 140 (10th Cir. 1974). Using original surveyors' notes and reports, the subsequent government surveyors retraced and remonumented the original Jessen survey. The court did not err in accepting the resurvey as correct rather than relying on the acreage stated in the patent.[4] As found by the district court, and approved by this court, appellants' bona fide rights in their land extend only to the center line reestablished from the Jessen survey in existence prior to their patent. Therefore, the proviso of 43 U.S.C. § 772, forbidding impairment of bona fide rights by government resurveys, is inapplicable in this case.

■ The trial court also rejected appellants' argument that the fence line provides a basis for an action against the United States on the grounds of adverse possession and boundary by acquiescence. The Supreme Court has ruled that no title to public lands can be obtained by adverse possession, laches, or acquiescence. *United States v. California*, 332 U.S. 19, 39–40, 67 S.Ct. 1658, 1668, 91 L.Ed. 1889 (1947). The district court therefore properly rejected these claims.

■ Appellants also claim that the government is equitably estopped to deny that the fence line constitutes the true boundary because the United States Forest Service, through its agents and employees, either acquiesced in their treating or induced them to treat the fence line as the boundary. We agree with the Ninth Circuit, however, that in addition to establishing the traditional elements of estoppel,[5] the appellants must also show affirmative misconduct by the government or its agents to establish estoppel against the government in an action concerning boundaries of land granted in a federal land patent. *United States v. Ruby Co.*, 588 F.2d 697, 703–04 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). The testimony at trial indicates that the fence was erected by national forest permittees along the easiest path, and not in a straight line, to contain their livestock. Furthermore, there was evidence that the fence purposely was placed well within national forest land, and that no attempt was made to place the fence on the boundary. Nothing in the record indicates that the government's agents engaged in affirmative misconduct, and therefore appellants' estoppel argument must fail.

AFFIRMED.

BARRETT, Circuit Judge, concurring in part and in the result, and dissenting in part:

I concur in all aspects of Judge McKay's opinion and in the result reached, except the adoption of the additional showing of "affirmative misconduct" above and beyond the four traditional elements of estoppel required in an action against the govern-

---

one South of Range Seven East of Salt Lake Meridian in Utah Containing one hundred and Sixty acres.
Plaintiff's Ex. 16.

4. This court has in the past accepted reliance on stated acreage as being less persuasive in the face of other elements of land descriptions. *United States v. Reimann*, 504 F.2d 135, 140 (10th Cir. 1974).

5. The traditional elements of estoppel are:

(1) The party to be estopped must know the facts; (2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) The latter must be ignorant of the true facts; and (4) He must rely on the former's conduct to his injury.
*United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979).

ment concerning boundaries of land granted in a federal land patent. This additional showing was first announced in *United States v. Ruby Co.*, 588 F.2d 697 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979).

I do not believe that the requirement of the "affirmative misconduct" showing is justified. Instead, I would apply the traditional elements of estoppel in actions against the government and measure their application to the facts in order to effect justice and fair play, unless there exist compelling reasons of public policy for refusal to apply estoppel against the government.