**Jean TADLOCK, Ralph Tadlock, Oliver Tadlock, Irene Tadlock, Bill C. Tadlock, Robert B. Tadlock, Jane Tadlock, and Gay T. Jones, Plaintiffs,**

v.

**The UNITED STATES of America, Weeks Exploration Company, a Delaware Corporation; Neste Oil, Inc., A Texas Corporation; BHP Petroleum (Americas) Inc., and Rubie C. Bell, Defendants.**

Civ. A. No. J89–0437(W).

United States District Court,
S.D. Mississippi, W.D.

Aug. 30, 1990.

---

Daniel Lynn, Asst. U.S. Atty., Ed Brunini, Auvergne Williams, III, Jackson, Miss., for defendants.

Walker Watters, Jackson, Miss., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This case was tried to the court sitting without a jury on July 25, 1990, and Au-

gust 23, 24, 1990. The question presented to the court was whether either the plaintiffs or the defendant holds title to certain tracts of land in Scott County, Mississippi. Having filed suit on August 2, 1989, plaintiffs allege jurisdiction under 28 U.S.C. § 1402(d),[1] which grants to district courts jurisdiction over actions to quiet title to real property in which interest is claimed by the United States. The Quiet Title Act, 28 U.S.C. § 2409a, provides the exclusive means by which adverse claimants can challenge title to property vested in the United States. *Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983); *Borough of Marcus Hook v. Marine Investors,* 678 F.Supp. 109 (E.D.Pa.1987). Plaintiffs, Ralph Tadlock, Jean Tadlock, Oliver Tadlock, and Irene Tadlock claim title to a strip of land along the south side of the SE ¼ of the NW ¼ of Section 19 lying south of an east west fence line. Plaintiffs Robert Tadlock, Bill C. Tadlock, Jane Tadlock, and Gary T. Jones claim title to a strip of land located in the NE ¼ and SE ¼ of the NW ¼ of Section 19 and lying east of a fence line running north and south. Both set of plaintiffs claim by way of adverse possession and by way of estoppel. The defendant United States of America disputes all of plaintiffs' claims and asserts in addition that plaintiffs' action is barred by the dictates of 28 U.S.C. § 2409a(g)[2] because plaintiffs failed to commence this action within the twelve years period of limitations.

Having reviewed all of the evidence in this case, pursuant to Rule 52, Federal Rules of Civil Procedure, the court is now prepared to announce its decision. For the reasons which follow, the court finds for the defendant United States of America and against the plaintiffs.

*Background*

This boundary dispute was initiated by plaintiffs after a recent survey showed that they held no legal title to two parcels of land adjacent to a tract of government property upon which a producing oil well had been drilled in 1989. If determined to be owners of the two disputed tracts in question, plaintiffs would stand to share in royalty payments flowing from the oil well.

The two disputed tracts are deeded to the United States, as the United States is capable of tracing its chain of title back to a patent on June 9, 1840. The United States acquired title to the disputed tracts on December 31, 1935, by warranty deed from the Bienville Lumber Company.

Plaintiffs do not claim deed coverage to the disputed tracts. Plaintiffs further acknowledge that they have not paid taxes on the subject property, nor mortgaged it, nor leased it to anyone. Hence, neither the tax records nor tax assessments on their face dispute the government's legal title.

*The Issues*

■ Plaintiffs recognize that they may not assert adverse possession against the United States. 28 U.S.C. § 2409a(n); *U.S. v. California,* 332 U.S. 19, 67 S.Ct. 1658, 1668, 91 L.Ed. 1889 (1947); *U.S. v. Pappas,* 814 F.2d 1342, 1343 (n. 3) (9th Cir.1987); *Sweeten v. United States Department of Agriculture Forest Service,* 684 F.2d 679, 682 (10th Cir.1982). The plaintiffs' argument is that prior to the government's purchase of the land in 1935, they and their predecessors had acquired title by adverse possession against the Bienville Lumber Company.

Plaintiffs contend that on both tracts of land (see exhibit G–2 which is attached hereto) there are fences recognized by all as the boundary lines between the Tad-

**1.** Section 1402(d), 28 U.S.C., provides that any civil action brought pursuant to 28 U.S.C. § 2409a "to quiet title to an estate or interest in real property in which an interest is claimed by the United States shall be brought in the district court of the district where the property is located...."

**2.** Section 2409a(g) of 28 U.S.C. provides that actions brought under the section, except those brought by a state, "shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."

locks' property and that of the Bienville Lumber Company/United States. According to plaintiffs, they and their predecessors treated the land within the fences as theirs, as they farmed it, lived on it, ran cattle on it, and sold timber off of it. Further, says the plaintiffs, after purchasing the property, the United States recognized their ownership of the land since the United States posted its "property boundary" signs beyond the fence lines.

The United States quarrels with all of plaintiffs' conclusions. The United States first points out that only it holds legal title to the property in question. Then, the United States denies that plaintiffs adversely possessed the tracts from the Bienville Lumber Company prior to the United States' purchase of it in 1935. Specifically, by way of expert testimony, the United States has presented evidence of aerial photographs and government surveys which purport to show that, contrary to plaintiffs' assertions, the fences in question in 1923–24, if erected, would have been demolished that year and that the fences were not in existence in 1935, or 1940, or 1946. Further, the United States has sought to show that in 1923–24 the Bienville Lumber Company cut timber off the disputed tracts, thereby evidencing Bienville's claim to the property at the time. Finally, the United States has presented proof that while its employees posted government signs beyond the fence lines, that this was but an error predicated upon a misunderstanding born in 1953 when certain Forest Service officials proposed to deed the land in question to the plaintiffs. However, says the government and borne out by the facts, this agreement was never signed by the United States, never consummated, never filed of record. Hence, says the United States, while this circumstance supplied confusion, it did not supply any legal title upon plaintiffs.

*Adverse Possession*

■ Plaintiffs who are claiming adverse possession have the burden of proof. *Roy v. Kayser*, 501 So.2d 1110, 1111 (Miss. 1987); *Gadd v. Stone*, 459 So.2d 773, 774 (Miss.1984); *Georgia Pacific Corporation v. Blalock*, 389 So.2d 498, 502 (Miss.1980). In order to prove title acquired through adverse possession, "the evidence should be clear and fairly convincing." *Fairley v. Howell*, 159 Miss. 668, 131 So. 109, 110 (1930). Thus, the plaintiffs had to satisfy their burden through proof that is clear and convincing. *Anderson v. Anderson–Tully Company*, 196 F.2d 684, 687 (5th Cir.1952). In order to prevail, they must show that the possession is: (1) hostile and under claim of right; (2) actual; (3) open, notorious, and visible; (4) exclusive; (5) continuous and uninterrupted; and (6) peaceful. *Stallings v. Bailey*, 558 So.2d 858, 860 (Miss.1990); *McNeely v. Jacks*, 526 So.2d 541, 544 (Miss.1988); *Roy v. Kayser*, 501 So.2d at 1111; *also see Houston v. United States Gypsum Company*, 652 F.2d 467, 472 (5th Cir.1981).

Of course, as recognized by all parties, in order to prevail, plaintiffs must prove adverse possession against Bienville Lumber Company before Bienville sold its interests in the disputed property to the United States, since plaintiffs may not claim adversely against the United States. 28 U.S.C. § 2409a(n). *U.S. v. California*, 67 S.Ct. at 1668; *U.S. v. Pappas*, 814 F.2d at 1343 (n. 3); *Sweeten v. United States Department of Agriculture Forest Service*, 684 F.2d at 682. Specifically, plaintiffs must prove that between the years 1925 and 1935 they and their predecessors had adversely possessed the land in question from Bienville Lumber Company.[3]

■ Plaintiffs have failed to meet their burden of proof in establishing that they adversely possessed the land in question

---

**3.** Mississippi Code Annotated § 15–1–13 (1972) provides that title to land vests in any person claiming to be the owner who for a period of ten (10) years has had actual adverse possession, uninterrupted, and continuous for the full ten years. The law applicable in a case involving the issue of adverse possession is the law of

the state wherein the claimed property lies. *Christ Church Pentecostal v. Richterberg*, 334 F.2d 869 (10th Cir.1964), cert. den., 379 U.S. 1000, 85 S.Ct. 719, 13 L.Ed.2d 702 (1965); 2 C.J.S. Adverse Possession § 7; *James v. Langford*, 558 F.Supp. 737 (W.D.Okl.1981).

before the United States purchased it. Plaintiffs have never paid taxes on this property or mortgaged it. Plaintiffs claim that certain fences have always delineated the boundaries. Yet, this contention is thoroughly undermined by the government's proof. Experts for the government testified that aerial surveys coupled with timber sale records firmly establish that in 1923–24 the disputed tracts were harvested by the Bienville Lumber Company, a fact which shows that Bienville asserted ownership of the property and, further, that because of the way the harvesting was done, no fences could have survived in the area. Specifically, the government's proof on this matter showed that in 1923 and 1924 the North ½ of Section 19 was split into a North half and a South half by a dummy line running east and west on which Bienville Lumber Company operated a steam donkey. This steam donkey was a steam engine driving a cable winch puller that snaked the logs into the dummy line tract from ¼ mile North and ¼ mile South, thus logging the entire NW ¼ of Section 19 and part of the NE ¼ as well. This snaking of the logs plowed open the ground in fairly straight drag paths back to the steam puller on the dummy line. This is clearly visible on aerial photographs. One immediately recognizes that these log-paths show that the Bienville Lumber Company did not stop its logging short of its deed lines for a fence. The log drag paths run in lines which would have totally destroyed a fence had one existed in the location of the present fences claimed to by the plaintiffs.

Then, the government brought in government surveys from 1940 until 1953. The United States government surveys from 1940 until 1953 located, monumented, and marked the lines around the northwest ¼ of Section 19, Township 5 North, Range 8 East, according to the government deed, and the land was included, recognized, and managed as part of the Bienville National Forest. These surveys also thoroughly undermine plaintiffs' contentions that the claimed fences were then in existence, in the locales of the present fences.

In 1940, the General Land Office of the Department of the Interior conducted a re-survey of the East, West, and North boundaries and Subdivisional Lines of Township 5 North, Range 8 East, of the Choctaw Meridian, Mississippi. Conducted between February 1940 through April 1940, the survey sought to reaffirm the lines on the original survey conducted in 1883. In their survey notes, the survey team noted structures and other landmarks which crossed the boundary lines having any relationship to ownership, i.e., fences, creeks, etc. Significantly, the survey does not mention the existence of a fence on the disputed property, the closest fence being approximately one-fourth of a mile to the East.

In 1946, another survey was conducted, and the first mention of a fence on the disputed property appears. The fence mentioned is that running East and West, no mention being made of a fence running North and South. There is, however, mention of an abandoned fence to the South of the East and West fence.

In 1953, another survey was conducted in connection with an experimental mapping project. Again in 1956, a survey was conducted, but this was merely repetitive of the 1953 survey. No mention of the alleged fence running North to the South appears on either the 1953 or 1956 survey.

Finally, prior to purchasing the property in 1935, the United States investigated the title and the possibility of adverse possession. Forest Service employees made an exhaustive check of the disputed lands which resulted in Certificates of Possession showing there was no adverse possession and that the claimed fences did not exist in the year 1935. Further, in connection with this investigation, Bienville Lumber Company employees signed affidavits attesting to their familiarity with the disputed lands and with the community. In their affidavits, they specifically stated that they had no knowledge whatsoever of any adverse claims to the property.

The sum of all this proof overwhelms the plaintiffs' case. In opposition, the plaintiffs produced little. The plaintiffs contend that the property in dispute has been

owned by their predecessors prior to the 1800's and that their family has pastured, farmed, and cut timber from the land to the present fence site since 1900.

Plaintiffs offered the testimony of Mabel Carr, born in July 1912, who says she traveled on the disputed property with her father when she was a young child. She recalled seeing a fence on the property but could not state that the fence was in the same location as either of the existing fences. She and her father traveled on the west side of the fence, on the land owned by the Bienville Lumber Company. She also testified that in the early 1920's the land in the area was considered to be open range, that is, anyone could allow his cattle to wander on to another person's property for the purpose of grazing.[4]

Plaintiff offered the testimony of Malcolm Barlow, a professional land surveyor, who prepared a plat of the area for the Weeks Exploration Company concerning the oil well which was constructed in 1988 and 1989. He testified that the original survey and the following survey of 1940 established the township lines and only surveyed the perimeter of Section 19. It was his opinion that in some cases the existing lines do not conform to the survey lines. He admitted that the 1940 survey notes do not indicate the presence of a fence and that the first mention of the fence running North and South appears in the 1953 survey notes.

Other witnesses, too young to testify to what transpired with regard to the property between 1925 and 1935, gave accounts of fences being fixed on the disputed property, the government's failure to complain of the plaintiffs' use of the property subject to its acquisition, and the fact that the government has made no use of the property. Much of the testimony dwelled on the government's proposal in 1953 to recognize the fence line as the boundary line between the United States and the plaintiffs' property. One such witness was Robert Tadlock who was born in 1939 and who owns the property to the East of the government property. He testified that he thought the fence formed the western boundary of his land and constituted their deed line. He also opined that what has been referred to as the old recognized corner, between the juncture of the two fences, was recognized as the corner of his property and as the center of Section 19. As far as Robert knew, there was no survey of the property conducted in 1946.

Albert Lynn Tadlock born in 1928 also testified that there has always been a fence on the property in the location of the East/West fence as long as he could recall, as he had hunted on the property as a young child. He also recognized the corner of the two fences being the corner of the boundary line on the East side of the SW ¼ of the NW ¼.

Bill Tadlock, born in 1930, testified that the fence running North to South was repaired in 1938.

Gay Jones, born in 1931, said she recalled that the North–South fence was repaired when she was 7 or 8 years of age. She also could not recall the 1946 survey. She testified that she pays taxes on the land described in her deed but believed that this included the property to the fence.

Ralph Tadlock, born in 1936, testified that the East/West fence was erected in 1961 but testified that the government at an earlier date had marked the fence line with red paint indicating the boundary line.

Oliver Tadlock, born in 1921, testified that the Bienville Lumber Company had not objected to their farming the property. He recalled the early existence of the north/south fence and stated that it was the recognized boundary line.

By way of deposition taken in August 1989, Roy Tadlock, eighty-five years old at the time, testified that the fences, separating the government land from the land of those to the East and South, have been in existence all of his life. He recalled working for the Forest Service, working with

---

**4.** Other testimony during the trial suggested that pursuant to the "open range" understanding, that a landowner could fence in portions of another's property for cattle grazing, but that such conduct was not tantamount to adverse seizure.

the surveyors, and stated that the boundaries of the government ran along the old south fence line. As a young man, at the age of 17 or 18, he says he worked for the Bienville Lumber Company. According to him, his family treated the disputed land as theirs and that Bienville Lumber Company had never cut the timber beyond the fences.

Having weighed the evidence submitted by both sides, the court is persuaded that plaintiffs have not shown that their alleged possession was hostile and under claim of right, actual, open, notorious, and visible, exclusive, continuous and uninterrupted, and peaceful. *See People's Realty & Development Corporation v. Sullivan,* 336 So.2d 1304 (Miss.1976). Plaintiffs' proof is unpersuasive given the quality of the government's proof in opposition.

### Estoppel

■ Plaintiffs' claim for estoppel is also unpersuasive. While plaintiffs admit that they cannot adversely possess against the United States, they still contend that their estoppel argument has merit. They argue that the United States is estopped now to assert ownership because it failed to do so over the years and because it recognized Tadlock ownership by its positioning of government signs upon the disputed tracts. As earlier touched upon, in 1953 certain local officials with the United States Forest Service, pursuant to an experimental mapping program, met with Robert Tadlock and E.A. (Ersey) Tadlock and entered into an agreement with the Tadlocks that would have conveyed to the Tadlocks the disputed land in question. The agreement was sent up to the official entrusted with the approval of the transfer, but never signed or recorded. (See Plaintiffs' Exhibit No. 5). There was testimony that while these two agreements were not consummated, some agreements between other landowners and the government were approved. Following these unconsummated sales, the local U.S. Forest officials apparently considered the fences as the boundaries between the Tadlock property and the government's land. Plaintiffs charge that this situation, rectified only after a survey in connection with

the drilling of an oil well in the vicinity, constitutes estoppel.

The court disagrees. First, the 1953 agreement was never signed or recorded. So, no rights of conveyance may be found within this document.

■ Next, it is clear that, as here, the error of a government employee in incorrectly posting signs delineating the government's property may not divest the United States of title to same. *See Office of Personnel Management v. Richmond,* —— U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *U.S. v. California,* 67 S.Ct. at 1669; *Beaver v. United States,* 350 F.2d 4, 8 (9th Cir.1965), cert. den., 383 U.S. 937, 86 S.Ct. 1067, 15 L.Ed.2d 854 (1906), especially where the government employee had no power to sell or convey United States property, *U.S. v. California,* 67 S.Ct. at 1669; *U.S. v. Vonderau,* 837 F.2d 1540, 1541 (11th Cir.1988); *City and County of Denver, Acting By and Through Board of Water Commissioners v. Bergland,* 695 F.2d 465, 482 (10th Cir.1982); *U.S. v. 18.16 Acres, More or Less, Situate in Granville County, State of N.C.,* 598 F.Supp. 282, 289 (E.D.N.Car.1984); *also see U.S. v. Medico Industries, Inc.,* 784 F.2d 840, 846 (7th Cir.1986).

In opposition, plaintiffs submit the cases of *Sweeten v. United States Department of Agriculture Forest Service,* 684 F.2d 679 (10th Cir.1982), and *United States v. Ruby Company,* 588 F.2d 697 (9th Cir. 1978), cert. den., 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). *Ruby* involved a suit by the United States to quiet title to certain property. *Sweeten* is a suit to quiet title brought by the plaintiffs against the United States.

In *Ruby,* beginning with the premise that "since estoppel is an equitable doctrine, it should be applied 'where justice and fair play require it.'" 588 F.2d at 703, the court sought to weigh any injustice that could result from the wrongful conduct of the government against any damages that could inure to the public through the imposition of estoppel. This "weighing", according to the court, could be accomplished

by considering the traditional elements of estoppel, coupled with consideration of any affirmative misconduct by the government. The court explained its thinking as follows:

[t]he court can refuse to apply the doctrine when equity-policy considerations so demand, even though the technical elements may be present. While we recognize that we have held that estoppel may lie in cases involving title to public lands, we are also aware that policy considerations demand that it not be so applied without compelling reasons. This principle is a corollary to the constitutional precept that public lands are held in trust by the federal government for all of the people.... Thus, while one may be sympathetic with the landowners in this case, we must not be unmindful that the land involved belongs to all the people of the United States. Therefore, even if the landowners had proven all the elements necessary for estoppel, they would additionally need to demonstrate such equities which, on balance, outweigh those inherent equitable considerations which the government asserts as the constitutional trustee on behalf of all the people.

588 F.2d at 704–05.

In *Sweeten*, the court disregarded the plaintiffs' estoppel argument, although it, like the court in *Ruby*, held that not only must the ordinary elements of estoppel be satisfied, but there must also be proof of "affirmative misconduct by the government or its agents to establish estoppel against the government in an action concerning boundaries of land granted in a federal land patent." 684 F.2d at 682.

Thus, although both courts have concluded that the doctrine of equitable estoppel may be asserted against the government in a suit involving title to public lands, these Courts have conditioned the success of the case on not only proving the ordinary elements of estoppel, but also a showing that there was affirmative misconduct on the government's part. The holdings in *Ruby* and *Sweeten* have not been adopted by the Fifth Circuit.

In the most recent case of *Office of Personnel Management v. Richmond, supra,* the United States Supreme Court noted that despite its earlier decisions regarding the application of estoppel against the government, "dicta in our most recent cases have suggested the possibility that there might be some situation in which estoppel against the Government could be appropriate." 110 S.Ct. at 2469. The Court observed that in an earlier decision, the Supreme Court itself had indicated that some type of affirmative misconduct might rise to the requisite level for a showing of estoppel against the government. Significantly, the court noted that although some courts of appeals had determined that the language from predecessor Supreme Court decisions allowed the application of estoppel against the government, every such case that had come before the United States Supreme Court for review had been reversed. Still, although commenting on the high mortality rates of such suits, the Court declined to hold that such suits in all circumstances would be barred.

But, even under the formula enunciated in *Sweeten v. United States Department of Agriculture Forest Service, supra,* and *United States v. Ruby Company, supra,* the court fails to find that under the circumstances *sub judice* the United States has demonstrated affirmative misconduct which should convey to plaintiffs public lands held in trust by the federal government for all of the people.

Then, notwithstanding the above observations, the plaintiffs have not established a case of estoppel that would be good against anyone, let alone the United States of America acting in its sovereign capacity. The four traditional elements of estoppel are not present, those being: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted on, or must so act that the party asserting estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) the latter must rely on the former's conduct to his injury. *City and County of Denver, Acting By and Through Board of Water Commissioners v. Bergland,* 695

F.2d at 482; *Hazel Time Corp. v. United States*, 820 F.2d 1190, 1195 (Fed.Cir.1987). Plaintiffs have never been ignorant of the true facts, and there has been no detrimental reliance, the core of any estoppel case.

### Statute of Limitations

■ The government's contention that the plaintiffs have failed to file within the requisite statute of limitations is governed by 28 U.S.C. § 2409a(g).[5] To succeed on this defense, the government must show that the plaintiffs either had actual or constructive notice of its claim more than twelve years prior to bringing this action, which was filed in 1989. *D.C. Transit System, Inc. v. U.S.*, 531 F.Supp. 808 (D.C.1982), aff'd, 790 F.2d 964 (D.C.Cir. 1986). Actions under this statute are deemed to have accrued when the plaintiffs knew or should have known of the claim asserted by the United States. It is not necessary the plaintiffs "have full knowledge of the full contours of the government's claim before the action accrues. All that is necessary is a reasonable awareness that the government claims some interest adverse to the plaintiff." *Vincent Murphy Chevrolet Company, Inc. v. United States*, 561 F.Supp. 1233, 1235 (D.C.Col. 1983), aff'd, 766 F.2d 449 (10th Cir.1985); *also see D.C. Transit System, Inc. v. U.S.*, 717 F.2d 1438, 1441 (D.C.Cir.1983); *Borough of Marcus Hook v. Marine Investors, Inc.*, 678 F.Supp. at 110; *D.C. Transit System, Inc. v. U.S.*, 531 F.Supp. at 811.

■ The plaintiffs contend that they did not have actual notice of the government's claim until 1989, following the commencement of the drilling of an oil well located in the Bienville National Forest when they were denied royalty payments. Thus, the court must determine from the facts established at trial whether plaintiffs had actual or constructive knowledge of the United States' claim to the disputed property within the limitations period. In determining whether a party possesses constructive knowledge of such adverse claim, the court must assess the facts according to state law. *D.C. Transit System, Inc. v. United States*, 531 F.Supp. at 812; *also see King v. United States*, 585 F.2d 1213 (4th Cir.1978). The court must strictly construe the statute of limitations period. *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Park City, Montana v. United States*, 454 F.Supp. 1, 3 (D.Mont.1978), aff'd, 626 F.2d 718 (1980), cert. den., 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981). This court finds that ample notice was available to claimants and their predecessors in title by the above acts and that their failure to file their claim within the twelve-year period triggers 28 U.S.C. § 2409a(g). Thus, their claims are barred for failure to commence within twelve years of those dated.

In 1940 the Forest Service caused the survey by the U.S. General Land Office of Township 5 North, Range 8 East, which included Section 19. Section corners and quarter section corners were remonumented during this survey. Again in 1946 the Forest Service surveyed the true deed line on the east and south sides of the Northwest 14 of Section 19. Then, the claimants and their predecessors in title should have known of the claim of the United States when the United States, after first having inspected the entire Northwest ¼ of Section 19 for any use adverse to that of Bienville Lumber Company, acquired title to the property on December 31, 1935, by Warranty Deed properly recorded in the land records of Scott County. The recording of the deed constituted notice to the world that the United States claimed ownership to the property. *See Walker v. Easterling*, 215 Miss. 429, 61 So.2d 163 (1952); *Boyd v. Entrekin*, 209 Miss. 51, 45 So.2d 848 (1950). Further, the recording of a deed has been construed as actual knowledge of an adverse claim. *Hardy v. Lynch*, 258 So.2d 414 (Miss.1972).

Then, there is the failed agreement between the plaintiffs and the government in 1953, at which time certain local officials with the United States Forest Service sought to convey the tracts in question to them. This circumstance certainly be-

5. See Footnote 2.

speaks of notice of the government's adverse claim, as well as a tacit recognition by plaintiffs of the government's ownership of the disputed lands. Plaintiffs would argue the point, contending that the government's placement of signs misled them. However, the agreement was never signed and never recorded, a fact which should not have escaped the plaintiffs' attention and which should have invigorated their concerns if they were laying claim to the lands.

Hence, under the foregoing facts, the court finds that plaintiffs and their predecessors had actual or constructive knowledge of the United States' adverse claim to the disputed tracts and that plaintiffs failed to file this lawsuit within the time frame required.

In conclusion, the court finds that plaintiffs have failed to carry their burden of persuasion on their claims of adverse possession and estoppel. Contrary-wise, the United States of America has shouldered its burden of showing that plaintiffs failed to file this lawsuit within the applicable statute of limitations. Hence, it is ordered and adjudged that verdict be for the United States and against the plaintiff.

SO ORDERED AND ADJUDGED.

APPENDIX